# THE PEOPLE *v.* MOSES FRANK.

INDICTMENT CHARGING A SERIES OF ACTS. — Where a statute in defining an offense enumerates a series of acts, either of which separately, or all together, may constitute the offense, all such acts may be charged in a single count in the indictment.

INDICTMENT FOR FORGERY.—An indictment for forgery which charges the defendant, in the same count, with having forged an indorsement on a draft, and also with having uttered and passed the draft knowing the forged indorsement to have been written thereon, does not charge two offenses.

SAME.—An indictment for forgery which charges that the defendant forged an indorsement on a draft, and that it was afterwards indorsed by other persons, and that after the true indorsement the defendant uttered it, does not charge two offenses.

FORGING INDORSEMENT UPON AN UNSTAMPED DRAFT.—The crime of forgery may be committed by forging an indorsement upon an unstamped draft.

UNSTAMPED INSTRUMENT AS EVIDENCE.—A forged instrument, though unstamped, may be used as evidence against the person charged with committing the forgery.

EVIDENCE ON TRIAL FOR FORGERY.—On a trial for uttering an instrument with a forged indorsement on it, other instruments claimed to have been forged and uttered by defendant about the same time may be used as evidence for the purpose of proving guilty knowledge, notwithstanding they had been the subject of other indictments on which the defendant had been tried and acquitted.

SAME.—An indictment for forging an indorsement on an instrument and uttering it with a forged indorsement on it, knowing it to have been forged, and a trial and acquittal, does not estop the People from using it as evidence on a trial for forging an indorsement on and uttering another instrument about the same time, unless it appear from the evidence offered in support of the estoppel that the jury by their verdict decided that the defendant did not commit any of the several acts charged as constituting the forgery.

VERDICT OF ACQUITTAL AS AN ESTOPPEL.—A trial and acquittal upon a charge of forging an indorsement on an instrument, and uttering it knowing an indorsement on it to have been forged, does not necessarily make the judgment of acquittal of itself an estoppel upon any matter except the forgery of the indorsement by the defendant.

EVIDENCE TO SHOW GUILTY KNOWLEDGE ON TRIAL FOR FORGERY.—On a trial for forgery no precise rule can be laid down with regard to the distance of time between the offense charged and the occurrence of collateral facts offered in evidence to prove guilty knowledge.

OBJECTION TO TESTIMONY.—A general objection to testimony offered that it is irrelevant is not sufficient if the real ground of objection is that no proper foundation has been laid for its introduction.

EVIDENCE OF ACTING AS A CORPORATION.—Upon a trial for forging a draft on a corporation, evidence that it was acting as a corporation is sufficient.

INTERLINEATION IN FORGED INSTRUMENT.—If, on a trial for forgery, it appears that an interlineation was made in the instrument after the forgery, by the consent of the defendant, and the indictment sets forth the instrument as interlined, there is no such variance as to entitle the defendant to an acquittal.

APPEAL from the County Court, City and County of San Francisco.

The indictment charged that the defendant, on the 17th day of August, 1864, had in his possession a draft, the tenor of which was as follows:

> "UTAH MINING COMPANY,
> 　　"Aurora, N. T., August 10th, 1864. }
>
> "Ten days after sight, pay to the order of H. Bloomingdale & Co., in United States gold coin, seven hundred and fifty dollars, value received, and charge the same as advised.
>
> 　　　　　　　　　　　　　　　　"F. J. BAUM, Sup't.
> "To Edward Conner, Esq.,
> 　　"Sec'y Utah Mining Company, San Francisco."

And that he feloniously made, forged, and counterfeited, and aided and advised and encouraged another to make, forge, and counterfeit, on the back of the draft, an indorsement in writing in tenor following, "H. Bloomingdale & Co.," with intent to defraud said Utah Mining Company, a company duly incorporated under the laws of California, and also one James L. Howard, and other persons; and also that the defendant, on the 17th day of August, 1864, had in his possession said draft—the same before the uttering and passing thereof having on its face been accepted by one Edward Conner, then the Secretary of the Utah Mining Company, and having been indorsed on the back thereof "F. J. Baum & Co.," and then having said forged indorsement thereon—and did feloniously utter, publish, and pass as true and genuine said forged indorsement of said

draft with intent to defraud said Utah Mining Company, and said Howard, and that defendant at the time well knew the forged indorsement was false and forged.

On the trial it appeared that defendant took the draft to James L. Howard to be discounted, and that Howard refused to discount it unless it was made payable in gold coin, and that he then, with the consent of defendant, interlined the words "in United States gold coin," and purchased it.

Defendant by his attorney objected to the draft being received in evidence, because the draft offered in evidence and set forth in the indictment was not the same one the indorsement was forged on, having been changed by the interlineation. The Court overruled the objection. The defendant by his attorney also objected to the draft being received in evidence because it was not stamped, and this objection was overruled.

The People called as a witness Charles Oppenheimer, and showed him draft number three, which was as follows:

"$600.          "UTAH MINING COMPANY,
[Stamp 10 cts.]          "Aurora, N. T., Sept. 2d, 1864.

"Ten days after sight, pay to the order of H. Bloomingdale & Co., six hundred dollars, value received, and charge the same as advised, payable in U. S. gold coin.

"F. J. BAUM, Sup't.
"To Edward Conner, Esq.,
"Sec'y Utah Mining Company, San Francisco."

Which draft was indorsed as follows:

"H. Bloomingdale & Co.,
"F. J. Baum & Co."

And offered to prove by him that the signature of H. Bloomingdale & Co. was not the signature of any member of that firm, or of any one authorized by them; and also offered to prove that defendant, on the 6th day of September, 1864, passed draft number three to J. L. Howard with the forged

indorsement of Bloomingdale & Co. thereon. Defendant objected to the testimony.

It was admitted in open Court by the District Attorney, such admission being taken as proof of the fact, that defendant had been indicted in this Court for writing the alleged forged indorsement of H. Bloomingdale & Co. on the back of number three, and for passing it with such alleged forged indorsement, knowing it to be forged; that he had been tried on such indictment and acquitted, and a judgment of acquittal duly entered in this Court thereon.

Defendant objected to any evidence tending to show that such draft, number three, was either forged or uttered by defendant, on the ground of his said acquittal, and to its admissibility in evidence against defendant, as irrelevant and incompetent, and tending to contradict the verdict and judgment of acquittal. That this draft, number three, is dated long subsequent to the date of the instrument set out in the indictment, and cannot tend to prove guilty knowledge of a prior date.

The Court overruled the objections. Testimony was then given tending to prove the matters proposed, and the draft was received in evidence. The People, by R. Newby, a witness, then gave evidence to the effect following:

Witness produced a draft, number nine. "I found this draft with the vouchers of the Utah Company. I am President of that company."

Draft number nine was then offered in evidence, to ·the admissibility of which the defendant objected, on the ground that it was irrelevant and incompetent. The objection was overruled, and the defendant excepted, and his exception was entered. The draft, number nine, was then read in evidence, and is as follows:

> " UTAH MINING COMPANY,     }
>     "Aurora N. T., Sept. 18th, 1864. }

" $334 56.   Ten days after sight, pay to the order of H. Bloomingdale & Co. three hundred and thirty-four fifty-six

one hundredths dollars, value received, and charge the same as advised.

"F. J. BAUM, Sup't.

"To M. Frank, Esq.,

"President Utah Mining Company, San Francisco."

On the back of which draft was indorsed " H. Bloomingdale & Co.," and across the face of which draft was written, " Accepted, payable in thirty days.   Edward Conner."

The defendant was convicted and sentenced, and appealed.

*Alexander Campbell,* and *A. Campbell,* for Appellant.

We do not question the correctness of the decisions of the Court in *People* v. *Shotwell,* January term, 1865, or *People* v. *Thompson, ante,* 214, but distinguish this indictment from these respectively, in this: That here, in the charge of forging the indorsement, the draft is set out *without* the acceptance of Conner upon it, and *without* the indorsement of F. J. Baum & Co. on the back; while the charge of uttering, alleges that defendant, on the 17th August, having in his possession, etc., the same before the uttering, etc., and having on the face thereof been accepted in writing by Conner, thus: "Accepted, August 16, 1864.   Edward Conner, Secretary U. M. Co." and indorsed on the back thereof, " F. J. Baum & Co.;" uttered the said forged indorsement knowing it to be forged, etc.   We contend, therefore, that on the indictment it appears that the forging of the indorsement was *before,* and the uttering *after* the acceptance by Conner and the indorsement by Baum & Co.   That this acceptance, and the indorsement by Baum & Co., intermediate the alleged forgery and uttering, makes the forgery and uttering two distinct and separate offenses.   The draft could not have been enforced for want of a stamp, and no one could have been defrauded by paying it.   (2 East. P. Crown, 953, 954.)

The defendant had been acquitted on the very charge of forging the indorsement, and of uttering No. 3, knowing such

forged indorsement.  The jury said, and the judgment held, that he did neither; and these points are allowed to be again agitated between the same parties in the same Court.  (*Outram* v. *Morewood*, 3 East. 346 ; 2 Smith's Leading Cases, 663, 667; 3 Cowen, 120, *Gardner* v. *Bucklew ;* 1 Iowa, 421, *George* v. *Gillespie;* 7 Comstock, 71, *Doty* v. *Brown;* 26 Maine, 555, *Chase* v. *Walker.*     *Vide* also, *Bell* v. *Raymond*, 18 Conn. 91.)

The true rule would probably be found to be, that if a subsequent uttering be made the subject of a distinct indictment, it cannot be given in evidence to show guilty knowledge of a former uttering.  (Wharton, 1,457 ; 2 Car. & P. 633; 4 Car. & P. 411 ; 10 Metcalf, 256 ; 29 Eng. L. and E. 548.)

*J. G. McCullough, Attorney-General,* for the People.

The forging and the uttering were one continuing act.  It is alleged that the uttering was " on said 17th day of August," which just before was alleged to be the time of forging. Clearly under our statute and decisions, and we think at common law, the indictment is sufficient.  (*People* v. *Shotwell*, 27 Cal. 394.)

Though the instrument was insufficiently stamped, it was still the subject of forgery, and properly admissible in evidence.  (1 Harrison's Digest, " Forgery," 2,091, 2,092 ; 2 Russell on Crimes, 346, 347, 348 ; Roscoe's Criminal Evidence, 489; Byles on Bills, star page 84.)  And since our stamp laws have been passed, the same cases have been adopted in this county.  (Edwards on the Stamp Act, 243.)

To prove guilty knowledge it was admissible to introduce in evidence draft No. 3.  It was made about eighteen days after defendant uttered the draft on which the indictment was found. (Roscoe on Criminal Evidence, 90 to 95, and 515 ; 2 Russell on Crimes, 403 to 407 ; 1 Whart. Am. Crim. Law, Sec. 631 *et seq. ;* 1 Phillipps on Evidence, Cow. & H. Notes, 768, 769; 3 Greenleaf on Evidence, Sec. 15.)  Nor does it matter that draft No. 3 was the subject of a separate indictment, nor does it affect the question of the *admissibility* that defendant had been tried and acquitted for forging draft No. 3.  (2 Russell

on Crimes, 406 ; 1 Phillipps on Evidence, C. & H. Notes, 768 ; 2 Wharton on Crim. Law, Sec. 1,457 ; *State* v. *Houston*, 1 Bailley Rep. 303 ; *Commonwealth* v. *Percival*, Thacher, 294 ; *Commonwealth* v. *Stearns*, 10 Metcalf, 257.)

By the Court, SANDERSON, C. J.

I.  The indictment is good, whether it be regarded as containing two counts or but one.  Where, in defining an offense, a statute enumerates a series of acts, either of which separately, or all together, may constitute the offense, all such acts may be charged in a single count, for the reason that notwithstanding each act may by itself constitute the offense, all of them together do no more, and likewise constitute but one and the same offense.  To illustrate our meaning, take the statute against forgery, under which the indictment in this case was found, where we find several acts enumerated, all of which are declared to be forgery.  Thus " the falsely making," " altering," " forging,". " counterfeiting," " uttering," " publishing," " passing," " attempting to pass " any of the instruments or things therein mentioned, with the intent specified, is declared to be forgery.  Now, each of those acts singly, or all together, if committed with reference to the same instrument, constitute but one offense.  Whoever is guilty of either one of these acts is guilty of forgery ; but if he is guilty of all of them, in reference to the same instrument, he is not therefore guilty of as many forgeries as there are acts, but of one forgery only.  Hence an indictment which charges all the acts enumerated in the statute, with reference to the same instrument, charges but one offense, and the pleader may therefore at his option charge them all in the same count, or each in separate counts, and in either form the indictment will be good.  (Wharton on Crim. Law, Sec. 390, 5th edition ; *People* v. *Shotwell*, 27 Cal. 394 ; and *The People* v. *Thompson*, *ante*, 216.)

But it is claimed that this case is distinguishable from the

65

cases of Shotwell and Thompson, because intermediate the alleged forgery and uttering, the draft in question was accepted by the drawee and indorsed by F. J. Baum & Co., thereby becoming a different instrument, and making, therefore, two offenses instead of one.    To this proposition we cannot assent. The mere adding of other parties did not destroy the identity of the instrument nor the unity of the transaction, under the rule in Shotwell's case, and the act of forging and the act of uttering were therefore both committed with reference to the same instrument:    And we may add, that so long as the various acts mentioned in the statute are committed with reference to the same instrument, they must be regarded as constituting one continuous transaction within the meaning of Shotwell's case, notwithstanding the lapse of time or the intervention of acts, which do not destroy the identity of the instrument.

II.    Upon the point that the indorsement upon the draft in question cannot be the subject of forgery, for the reason that the draft was insufficiently stamped, we are disposed to adopt the rule which is now well settled in England, that the forged instrument, though unstamped, is evidence against the defendant, and that the offense is complete whether the instrument be stamped or not.    It has there been repeatedly held that in order to constitute forgery, it is not necessary that the forged instrument should be available.    That though a compulsory payment by course of law cannot be enforced for the want of a proper stamp, yet a man may be equally defrauded by a voluntary payment being lost to him; and that the Acts of Parliament touching stamp duties, being mere revenue laws, do not make any change in the law of forgery, but only provide that the instrument shall not be available for the purpose of recovering on it in a Court of justice, and that it may be used as evidence for collateral purposes.    (*Rex* v. *Hawkswood*, *Rex* v. *Morton, Rex* v. *Reculist,* and *Rex* v. *Davis,* East's Pleas of the Crown, 955, *et sequens;* Edwards on the Stamp Act, 243.)    We do this the more readily because our Stamp Act is substantially a copy of the English statute under which the foregoing cases were decided.

III. The exception to the admission of certain other drafts claimed to have been forged and uttered by defendant about the same time, for the purpose of proving guilty knowledge, on the score that they had been the subject of other indictments upon which the defendant had been tried and acquitted, is not in our judgment well taken. It is well settled that in cases like the present it may be shown that the defendant uttered, at or about the same time, other forged notes or bills, whether of the same kind or a different kind, or that he had in his possession other forged notes or bills, tending to prove that he knew the note or bill in question to be forged. (Roscoe on Criminal Evidence, 90 *et sequens;* 1 Phil. on Ev., Cowen & Hill's notes, 768; 3 Greenleaf on Ev., Sec. 15.) Nor does it matter if such other notes or bills are the subjects of other indictments pending at the time. (*Commonwealth* v. *Sterns*, 10 Met. 256.) And in Houston's case, 1 Bailey, 300, it was held that the principle upon which such evidence is admitted is unaffected by the fact that the defendant has been tried and acquitted upon the notes or bills produced in evidence, although the force of the evidence may be thereby weakened. But it is earnestly claimed by counsel for the appellant in this case that the rule declared in Houston's case nullifies the doctrine of *res adjudicata* and is not law.

The soundness of the doctrine to the effect that the judgment of a Court of competent jurisdiction directly upon the point is as a plea a bar, or as evidence conclusive upon the same matter coming directly or incidentally in question in another action between the same parties, cannot be doubted, but a strict application of this rule to the case before us does not, as it will be found, exclude the evidence in question.

In order to render the verdict and judgment of not guilty upon the draft offered in evidence conclusive upon the facts which the prosecution sought to prove for the purpose of showing guilty knowledge, it must appear with certainty from the evidence offered in support of the alleged estoppel that those facts were directly and necessarily found by the verdict in that case in favor of the defendant ; or in other words that

the jury could not have found the verdict which they did without having passed directly upon the facts offered to be proved, and found them against the prosecution; for if it be doubtful upon which of several points the verdict was founded, it will not be an estoppel as to either. (*Wood* v. *Jackson*, 18 Wend. 107; 2 Smith's Leading Cases, 575; *Kidd* v. *Laird*, 15 Cal. 182.) No evidence as to the estoppel, either by the record or by parol, was offered, and the whole question as to what facts were directly determined by the verdict in the first case is to be determined upon the bald admission of the District Attorney that the defendant had been indicted for forging the indorsement upon the draft in question, and for uttering the draft, knowing the indorsement to be forged, and that he had been tried upon such indictment and found not guilty by the jury, and that a judgment in accordance with the verdict had been entered by the Court.

Leaving out of view the question of estoppel, the District Attorney was at liberty to prove all of the following propositions in connection with the draft offered in evidence for the purpose of showing guilty knowledge: First—That the indorsement upon the draft offered in evidence was forged by the defendant. Second—That it was forged, though not forged by him. Third—That he had it in his possession, knowing it to be forged; and, Fourth—That knowing it to be forged, he uttered or passed it to another with fraudulent intent. Now if all these propositions were directly and necessarily decided in favor of the defendant by the verdict and judgment in question, then the District Attorney was estopped from making the proof; or if either of them was so decided, as to such he was estopped, upon the principle that matters which have been once judicially determined cannot be again drawn into controversy as between the parties and privies to the determination; but if the verdict may have been founded upon one or more of those propositions without determining the others, and it is impossible to determine from the evidence offered in support of the estoppel, upon which proposition the verdict was founded, the District Attorney was not estopped

from making the proof in question; for the law does not favor estoppels, and a party cannot be precluded from giving evidence touching matters directly or collaterally involved in the issue upon the mere suspicion that they have already been determined against him by competent judicial authority; before that can be done it must 'appear with certainty that such matters have been so determined.

Upon the evidence offered in support of the estoppel in this case it cannot be affirmed with certainty that the jury passed upon and determined any of the propositions above specified except the charge that the defendant forged the indorsement. If he did forge the indorsement the verdict must have been guilty, hence a verdict of not guilty is conclusive upon that allegation. But this cannot be affirmed of either of the other allegations. It cannot be affirmed of the allegation that the indorsement was actually forged, though not forged by him; or that he had it in his possession; or that he knew it to be forged; or that he uttered it with intent to defraud; for it may be true that the indorsement was forged and that he knew it and had it in his possession but did not utter it, and the verdict would be right; or it may be true that he uttered it not knowing it to be a forgery and the verdict would be right. It cannot therefore be determined with certainty what the jury did decide, and hence as we have seen the verdict cannot operate as an estoppel except as to the allegation that the defendant forged the indorsement. Upon that allegation the prosecution offered no evidence. Evidence that the indorsement was forged was offered, but none was offered to show that the forgery was committed by the defendant. Thus it seems that the doctrine of *res adjudicata* which counsel has invoked has not been violated in this instance; for under a just application of that doctrine he fails to sustain by his evidence the estoppel for which he contends.

Nor do we think the points made by counsel for appellant grounded upon the claim that the drafts offered in evidence were not sufficiently connected, in point of time or otherwise, with the forgery charged in the indictment in this case to

create the presumption of guilty knowledge, well taken. In regard to the distance of time between the principal fact and the collateral facts proposed to be shown in proof of guilty knowledge no precise rule can be established so far as the question as to the admissibility of the evidence is concerned. To prove guilty knowledge in a charge of forgery, evidence of facts transacted three months before and one month afterwards has been received. But evidence of facts occurring five weeks afterwards has been rejected. (*Rex* v. *Ball*, 1 Camp. 324; *Rex* v. *Smith*, 4 C. and P. 411; *Rex* v. *Taverner*, 4 C. and P. 413, note *a*.)

Doubtless subsequent facts should appear to have some connection with the principal fact charged. But in a charge of forgery evidence of the subsequent uttering of other forged notes which are of the same manufacture is admissible. (*Rex* v. *Taverner*, *supra*.) Here the forged drafts offered in evidence may be said to be of the same manufacture as the one which is the subject of the indictment, for they were all drawn by the same party. In conclusion upon this point, it is sufficient to say that, from the very nature of the question, the admissibility of this character of evidence must be left in a great measure to the discretion of the Judge who tries the case. The inference of guilty knowledge to be drawn from such evidence may be safely intrusted to the jury, who will hardly fail, under the arguments of counsel, to discover whether such knowledge is fairly deducible from the facts in evidence or not.

The foregoing remarks apply alike to the exceptions to the admission of "drafts Nos. 2 and 3," as they are called in the record. The mere fact that "draft No. 2" was drawn in favor of other parties makes no difference in the rule under which this character of evidence is admitted.

IV. Undoubtedly "draft No. 9" was inadmissible unless accompanied by proof tending to connect the defendant with it in some manner, and the further proof that it was a forgery, etc. With such proof, however, it was admissible. The order in which this evidence ought to be received is a matter

resting in the discretion of the Court, and the fact that the draft was admitted in advance of the other evidence would be of itself no ground of error. The only objection made to its admission by counsel for the defendant was the very broad and general one that it was " irrelevant and incompetent," which the Court doubtless understood as covering not only the draft, but the other evidence of forgery, etc., which had been introduced in connection with " drafts Nos. 2 and 3," and which the Court, doubtless guided by the previous course of the trial, supposed at the time he ruled upon the objection would follow the admission of " draft No. 9." At the time of the ruling the Court undoubtedly supposed that such evidence would follow, and upon that hypothesis his ruling was correct. When it appeared that there was no such evidence to be given, counsel should have renewed their objection on that ground. Had they done so, the Court would undoubtedly have struck out the draft as evidence or instructed the jury to disregard it. We have repeatedly held that counsel must make their objections in such a manner as to leave no doubt as to the precise ground upon which it is placed. We do not think that was done in the present case, and we do not think that we should be justified in reversing the judgment on this ground, especially as it is more than probable that " draft No. 9 " had no effect on the result.

The other two points made by counsel to the effect that the Utah Mining Company is not a corporation as alleged, and therefore could not be defrauded, and that the interlining of the words " payable in U. S. gold coin " by Howard before he discounted the draft and after the defendant had forged the indorsement, made the draft other and different from what it was at the time of the forgery, are also untenable. Whether the Utah Mining Co. was a corporation *de jure* or not was not an issue in this case. If it was acting as such that was sufficient. (*Spring Valley Waterworks* v. *San Francisco,* 22 Cal. 434; *United States* v. *Amedy,* 11 Wheat. 392; *Danne-broge Gold Quartz Mining Company* v. *Allment,* 26 Cal. 286.) But admitting that the Utah Mining Company is not a cor-

poration, the indictment also charges an intent to defraud Howard who certainly had a legal existence; and so far as the interlineation is concerned it was made with the knowledge and tacit consent of the defendant and may be regarded as his act and deed.

Judgment affirmed.

Mr. Justice RHODES expressed no opinion.