[Crim. No. 31. Fourth Appellate District.—August 28, 1930.]

THE PEOPLE, Respondent, v. LESLIE J. EPPSTEIN, Appellant.

Cossack & Krum for Appellant.

U. S. Webb, Attorney-General, and Ralph O. Marron, Deputy Attorney-General, for Respondent.

HAINES, J., *pro tem.*—Leslie J. Eppstein and Alberta Eppstein, who are husband and wife, were informed against for issuing fictitious checks, a felony. Alberta Eppstein pleaded guilty and Leslie J. Eppstein not guilty, whereupon the cause was, as to him, set for trial. Before the trial date, however, the district attorney filed an amended information charging both husband and wife in three counts with the crime of issuing at Ontario in San Bernardino County three several fictitious checks and alleging as against the husband Leslie J. Eppstein, now appellant, the previous conviction of a felony. To each count of this amended information the appellant entered a plea of "not guilty," but according to statements in his counsel's briefs, admitted his previous conviction of the felony. As the wife had pleaded guilty to the information in its original form, a plea which she apparently repeated after it had been amended, appellant was alone brought to trial on the amended information. The jury having returned a verdict of guilty and his motion for a new trial having been denied, judgment was pronounced against him, from which, and an order denying his motion for new trial, he prosecutes the present appeal.

The evidence showed that each of the three checks involved ran in favor of Helen Westmore and purported to be signed by Bernard Holmes, Jr. One was drawn on the

Security First National Bank of Los Angeles, Main and Washington Branch, and the other two on the Bank of America of California, Tenth and Hope Branch in Los Angeles. Alberta Eppstein passed the three either all on January 24, 1930, or one or two on that day and one or two on the day following, by appearing at three several mercantile establishments in Ontario with a child eight or ten years old, apparently a little girl, making a trifling purchase, in each case tendering a check in payment, which she indorsed with the name Helen Westmore and receiving a balance in cash. In one case she is shown to have driven away with the said child in an automobile with a man not identified. A clerk in the establishment there involved took down her car number and a car of that number was proved to be registered in the name of appellant. It was shown that at neither the Main and Washington Street branch of the Security First National Bank of Los Angeles, nor at the First and Hope Street branch of the Bank of America of California in that city was any such person as Bernard Holmes, Jr., known, nor any account carried in that name. The further showing relied on by the People to connect appellant with the case consisted of the production of samples of his handwriting and the testimony of expert witnesses and also of a former employer familiar with his writing that the face of each of the checks referred to was in their opinion in appellant's hand. It was also shown that said Alberta Eppstein, earlier in the same month, had passed in Bakersfield and in Ventura numerous other checks appearing, according to the opinion of the same experts, to be in the same hand, and purporting to be signed by persons who were unknown and had no accounts at the banks on which they were drawn, and that on various occasions when such checks were passed by said Alberta Eppstein, she was accompanied by a little girl eight to ten years of age; also that during the period in question appellant and his wife lived at a certain address in Los Angeles and had a little girl of apparently that age, and that there were found there worn child's shoes identified as having been bought in Bakersfield with one of the fictitious checks there passed by Mrs. Eppstein.

Appellant assigns as error various rulings of the trial court on the introduction of evidence. He insists in

the first place that all testimony about what Mrs. Eppstein said and did in passing the three checks specifically involved in the information ought, under section 1848 of the Code of Civil Procedure, to have been excluded on the theory that neither the declarations nor acts of another, especially when out of his presence, should be allowed to prejudice him. None of Mrs. Eppstein's statements testified to in terms implicated appellant or referred to him, nor are any of them relied on to establish the truth of what she said, the prosecution's point being rather that they were false. Plainly their admission did not violate the hearsay rule. Essentially her declarations were verbal acts and are inseparable parts of her conduct in inducing the merchants concerned to cash the checks. As the passing of these checks was of the essence of the crimes charged, Mrs. Eppstein's statements made in doing so were precisely a part of the *res gestae* within the rule laid down in *People* v. *Edwards,* 13 Cal. App. 551, 554 [110 Pac. 342], which appellant cites and on which, without reason, he relies. True, what she said could not be allowed to prejudice appellant unless there were competent evidence to connect him with the transactions. The opinions, however, of witnesses qualified to judge, that the checks were in his hand, when considered with the fact that it was his wife who passed them in the manner shown, tended strongly to raise the inference that the enterprise concerned them both. In our view the jury was entitled to have that combination of circumstances before it and to draw its own inferences.

Complaint is also made that the prosecution was allowed to show the passing by Mrs. Eppstein of the various other checks not involved in the information on which appellant was being tried. In this we find no error. ▮ The proof of other crimes, indeed, even though committed by the defendant on trial, is ordinarily inadmissible for the purpose of showing his guilt of the particular crime with which he is charged, and the prosecution has no right to offer such evidence for the mere purpose of prejudicing a jury against him. (*People* v. *Glass,* 158 Cal. 650 [112 Pac. 281]; *People* v. *Vertress,* 169 Cal. 404 [146 Pac. 890].) Yet it is thoroughly settled that evidence of other crimes is admissible when it tends to show that the crime for which a defendant is being tried is part of a general plan or system of

criminal acts pursued by such defendant with some sort of consistency. (*People* v. *Frank,* 28 Cal. 507, 515, 517–519; *People* v. *Calpestri,* 54 Cal. App. 45, 47 [200 Pac. 1054]; *People* v. *Sindici,* 54 Cal. App. 193, 196 [201 Pac. 975].)

■ The marked similarity of circumstances in which such other checks were passed by Mrs. Eppstein tended strongly to show that the passing of the checks described in the information was part of a system followed with more than usual persistence. The specific fault found is that, as is claimed, appellant was not connected with the passing of the checks in Bakersfield and Ventura, and, therefore, not shown to be connected with the system. These checks, however, were in evidence and the experts testified that in their opinion they, too, were in the same hand as the checks described in the information stated to be in their opinions those of appellant himself. The jury had the opportunity to make the comparisons.

■ Objection is made that the proof of the other crimes, i. e., the passing by Mrs. Eppstein of the checks at Bakersfield and Ventura, was made before there was other proof in the record that she had passed the checks described in the information and, therefore, that it was made before proof had been made of the *corpora delictorum* which the information charged; and appellant contends that the *corpus delicti* must be shown with respect to a crime charged in an information before proof of other crimes is in order. We know of no such rule. In *People* v. *Frank,* 28 Cal. 507, 518, 519, in considering the proof of other crimes than the one charged the court said: "The order in which the evidence ought to be received is a matter resting in the discretion of the court and the fact that the draft was admitted in advance of other evidence would be of itself no ground of error." Even were the rule on the subject as appellant contends, his contention about the state of the evidence when the proof of the passing of these other checks was made seems to us only partially sustained by the record.

■ Regardless, too, of all that, in the present case the point was waived. After the objection had been distinctly made by appellant's counsel the following colloquy ensued:

Mr. King (Deputy District Attorney): "I think we have arrived at an agreement. Mr. Cossack (appellant's counsel) will waive the order in which the witnesses are put on, but

he reserves the privilege to make any objection that he desires as to the admissibility of their testimony."

Mr. Cossack: "Yes, I will do that."

The rule for which counsel contends, even if it were as he states, which in our opinion it is not, would have nothing to do with the *admissibility* of the evidence of other crimes if independent proof of the *corpus delicti* charged in the information did finally appear, but would have to do only with the time when such evidence of other crimes might be admitted, i. e., the right to insist that it should not be before the jury in advance of the completion of independent proof of the *corpus delicti*. Even though appellant had had such a right, that was precisely what he waived.

■ Appellant claims also that the court erred in refusing to allow his counsel to inquire of the manager of the Main and Washington branch of the Security First National Bank of Los Angeles, who was a witness for the prosecution and had testified to the absence of any account there in the name of Bernard Holmes, Jr., as to whether said bank had other branches, citing *People* v. *Thal*, 61 Cal. App. 48 [214 Pac. 296]. There is nothing in the point, nor does anything in the case cited tend to sustain it. The check in question was drawn on the named branch of the bank and on none other. It is a matter of common knowledge that some banking institutions not only have various branches in the same city, but branches in many different cities. To require the prosecution, when a check is drawn on a particular branch of the bank, to prove that a drawee shown to have no account there, had none at any other branch of the same institution, might frequently involve a state-wide, or even a nation-wide inquiry. To exact that sort of investigation to negative the existence of an account which the evidence discloses no reason for believing to exist, would in many cases render proof of such crimes as those here charged impracticable.

■ Complaint is made that the court permitted evidence that Eppstein had at his home in Los Angeles a little girl of about the age of the one present with Mrs. Eppstein when the checks were passed. We are not able to perceive on what theory this evidence was objectionable or how it could tend, as claimed, to prejudice the jury against appellant. If not of great importance, it was at least admissible

as tending to corroborate the identification by the witnesses of Mrs. Eppstein as the one who had passed the checks.

 It is next claimed that the evidence is insufficient to sustain the verdict in that under section 31 of the Penal Code, to be a principal in the commission of a crime a person must either directly have committed it or aided and abetted in its commission or, if not present, must have "advised and encouraged its commission." While the jury may have thought it not improbable that appellant was the man with whom Mrs. Eppstein rode about on the afternoon when all or some of the checks described in the information were passed, there is no direct evidence that such was the case. Yet even if he was not in fact present, it seems to us that the evidence that he "advised and encouraged" his wife in what she did in passing the checks, though circumstantial, was sufficient to warrant the jury in so concluding. The jury might reasonably have found from the evidence that he wrote both the checks described in the information and the earlier ones which his wife passed. It is, of course, conceivable that one may on different dates, extending through most of a month, write a considerable number of checks, and subscribe thereto the names of persons other than himself, having no accounts at the places where the checks purport to be payable, all with an innocent purpose; but it is somewhat outside the ordinary experience of mankind. When, however, as here, the earlier ones having already been passed by the scrivener's wife, a series thereafter drawn by him is also passed by her, the inference that he advised and encouraged her in so doing becomes well nigh irresistible. It would require some stretch of the imagination to believe it at all probable that instead of advising and encouraging the crime, he had been merely "doing innocently some act essential to its accomplishment." We think that the jury was abundantly justified in inferring from the situation in evidence that appellant had advised and encouraged his wife to do what she did.

 It is also objected that there is no evidence that the Security First National Bank of Los Angeles, on the Main and Washington Street branch of which the check described in the first count of the information was drawn, and one of the parties which appellant and his wife are charged, in uttering such check, to have intended to defraud,

was a corporation. If the point were of consequence it would only affect one of the two parties whom in that count he is charged with having intended to defraud, but the point is of no consequence. The information, besides stating that there was no such person as the purported signer of the check in existence, sufficiently shows that the institution in question was a bank, and that the check was uttered, published and passed with intent to defraud both that bank and a named individual, and so does the evidence. That is enough to bring the case within the requirements of section 476 of the Penal Code. Whether the bank was also a corporation as charged, or a partnership or an individual doing business under a fictitious name, is immaterial. The situation seems to us wholly different from that discussed in *People* v. *Eppinger,* 105 Cal. 36 [38 Pac. 538], where the charge was one of forgery and the name claimed to have been forged, "Howell & Co.," might have been that of either a corporation or a partnership or might have been a fictitious name under which an individual was operating, and the information merely charged that there was no such individual without negativing the possibility that there was such a corporation or partnership.

It is finally claimed that because in his opening statement the deputy district attorney said that the People proposed to show that appellant and his wife conspired in the preparation and passing of fictitious checks, therefore, the court erred in refusing to instruct the jury that a man and his wife, being in law one person, are incapable of conspiring with each other, citing *People* v. *Richards,* 67 Cal. 412 [56 Am. Rep. 716, 7 Pac. 828], and *People* v. *Miller,* 82 Cal. 107 [22 Pac. 934]. *People* v. *Richards* did not involve the point at all but the court *arguendo,* in discussing another question, referred to 1 Hawkins' Pleas of Crown, chapter 72, where, as the court says, it is "laid down that under the statute, 21 Edw. I, one person alone cannot be guilty of a conspiracy; and therefore no prosecution under it was maintainable against a husband and wife only." It is true that it was flatly held in *People* v. *Miller* that a prosecution will not lie for the specific crime of conspiracy where the only parties charged with participating in it are husband and wife. No conspiracy, as such, has in the present case, been charged in the information. Indeed the real

point is not that the husband and wife acted as two individuals might have been expected to act, but rather that they acted as one. Certainly we are not called upon to extend the doctrine of *People* v. *Miller* to cover such a situation. In these circumstances, the only force to be attributed to the district attorney's remarks was that according to the theory of the prosecution the enterprise was the joint plan of the spouses, rather than something severally conceived by them. It will hardly be contended that under the law of this state a husband is incapable (to use the terminology of section 31 of the Penal Code) of advising or encouraging his wife to commit a crime. The more usual contention is that she is coerced by him into doing so. The only effect of the instruction asked for would have been to confuse the jury and it was properly refused.

The judgment and order denying a new trial are affirmed.

Cary, P. J., and Marks, J., concurred.