[Crim. No. 1609. First Appellate District, Division Two.—February 6, 1931.]

THE PEOPLE, Respondent, v. JOSEPH BARNES, Appellant.

William B. Hornblower and Fabian D. Brown for Appellant.

U. S. Webb, Attorney-General, and Ralph O. Marron, Deputy Attorney-General, for Respondent.

NOURSE, P. J.—Defendant was tried upon an information charging the crime of forgery. The jury returned a verdict of guilty and from the judgment upon the verdict and from the order denying his motion for a new trial the defendant has appealed upon a typewritten record.

The facts of the case upon which the jury's verdict of guilt was based are that the defendant on February 17, 1930, opened an account with the Bank of America at 631 Market Street in San Francisco under the name of Joseph Barnes, and gave as his address the Dale Hotel in San Francisco. The proprietor of that hotel identified the defendant as the same man who came to his hotel on February 17th and gave his name as Joseph Barnes and asked that his mail be held for him. On the following day the defendant opened an account with the Farmers and Merchants Bank at Oakland under the name of Henry Gail and gave as his address 412 Tenth Street, Oakland. The proprietress of a rooming-house at that address identified the defendant, Joseph Barnes, as the person who came to her house on that date, gave his name as Henry Gail, and requested her to hold mail coming to that address under the name of Henry Gail.

Immediately following the opening of these two accounts the defendant deposited cashier's checks in the Bank of America to the credit of Joseph Barnes and in the Oakland bank to the credit of Henry Gail, and on April 22, 1930, a check in the sum of $8,600 bearing the name of George K. Jensen was deposited in the Bank of America to the account of Joseph Barnes and bore his indorsement. Upon the bank's discovery that the name of Jensen was a forgery the defendant was arrested and executed a large number of exemplars of his handwriting in the presence of the police officers. A handwriting expert called on behalf of the People testified that the indorsement on the $8,600 check, the signature which the defendant made on the register of the rooming-house at 412 Tenth Street, and other documents introduced in evidence, were in the handwriting of the defendant. The witness Chauncey McGovern was called as a handwriting expert by the defendant and testified that he had made a thorough examination of all these documents and had at first reported that they were all in the

handwriting of the defendant, but upon further examination he had come to the conclusion that the indorsement upon the check in suit and some of the other documents offered were not in the defendant's handwriting. Aside from these conflicting opinions of the handwriting experts the evidence of defendant's guilt is clear and convincing and the point is not made on this appeal and it could not well be made in view of the record that the evidence is insufficient to sustain the verdict.

The first attack upon the judgment is the criticism of the trial court in limiting defendant's cross-examination of the handwriting expert called by the state. The state had put in evidence thirty-five exhibits upon which this witness had given his opinion. The defendant proceeded to cross-examine this witness at great length upon each one of the exhibits and was finally warned by the trial judge that he should curtail his cross-examination. The defendant now objects first, to the language used by the trial court in giving this admonition, and second, to what he asserts to have been a denial of his right to continue the cross-examination. The language of the court was merely an expression of the legal rule found in *People* v. *Rader*, 136 Cal. 253 [68 Pac. 707], where it is said that it is the right and duty of the trial court to expedite business by curtailing cross-examination upon immaterial and irrelevant matters. It seems to be mere sophistry to say that a court is in error in stating a well-settled rule of law before the jury, particularly in view of the presumption that the jurors are presumed to know the law, but if any error was made in this respect it was immediately cured by the action of the trial judge in admonishing the jury to disregard his remarks.

The second point is based upon a misconception of the action of the trial judge. Defendant's counsel was merely admonished that it was the duty of the court to expedite business and to prevent cross-examination upon immaterial and irrelevant matters and to prevent repetition of questions already asked. He was then directed to proceed with his cross-examination with that warning. There is nothing in this language which justifies the assumption that the defendant was then directed to cease the cross-examination,

and the record discloses that the cross-examination was continued at considerable length thereafter.

Two other points are now raised in this same connection, both of which are based upon misconceptions of the action of the trial court. It is argued that in the court's statement that it was its right and duty to expedite business and to curtail cross-examination upon immaterial and irrelevant matters, it thereby expressed an opinion upon the weight of the testimony brought out in the cross-examination, and it is also argued that in this connection the trial judge was instructing the jury upon matters of fact. As we have heretofore said the trial judge was merely expressing, in a general way, a fixed rule of law as to his duty and was not in any sense commenting upon or expressing any opinion as to the weight of the testimony before him.

It is argued that the trial court erred in not ordering the witness McGovern to answer an inquiry as a handwriting expert on behalf of the defendant. The defendant insists that this witness did not come within the class of the privileged as specified in section 1881 of the Code of Civil Procedure, and that having been duly subpoenaed and in court he was bound to answer questions propounded to him, this duty being imposed upon the witness by section 2065 of the Code of Civil Procedure. With this we agree, but the rule does not apply when the defendant has demanded that the witness perform a duty which the statute has not imposed upon him—that he go to the trouble of making a scientific investigation of the documents which were presented to him in order that he might form and give an expert opinion as to the author of the respective writings. This is a duty which a party cannot impose upon an unwilling witness. The rule in this state is found in *People* v. *Conte,* 17 Cal. App. 771 [122 Pac. 450, 455, 457], where the court held that the doctor having been sworn as a witness could have been required to answer such pertinent questions as might have been put to him notwithstanding that they might call for expert testimony, but that "We know of no rule of law which would have authorized the court to compel him to go to the trouble and perhaps some expense of scientifically investigating the cause of the marks on the rock for the purpose of qualifying himself to give

expert testimony on that subject." Thus, where a doctor has made a medical examination of a party and has formed an opinion as to the physical injuries suffered he may be required to testify as to the opinion which he has formed, based upon the facts disclosed by such examination (*Berge* v. *Superior Court,* 154 Wash. 144 [281 Pac. 335]), and this duty is imposed upon the witness notwithstanding that the party calling him has not compensated him for his examination as an expert or other than by the ordinary witness fees received for attendance upon the court. (*Mc-Clenahan* v. *Keyes,* 188 Cal. 574 [206 Pac. 454].)

In presenting the point on this appeal the appellant assumes that the witness had made the necessary examination of the various writings and had then formed an opinion as to their authorship. The state assumes that the witness had not made such an examination and that the questions propounded to him by appellant's counsel required him to make such an examination before he would be able to give an intelligent answer. To understand the situation it is necessary to review the circumstances leading up to the ruling of the court complained of. Soon after appellant was arrested he made a number of exemplars in the presence of police officers, and these, with checks, cashier's checks, hotel registers and other documents were delivered to McGovern for the purpose of examination. All these were photographed and enlargements made from the negatives, and after an examination McGovern reported to the police authorities that they had all been written by the appellant. He was called as a witness for the defense and testified very positively that upon a second examination of these documents he was satisfied that the appellant had not written any of the so-called forgeries, that is to say, none of the checks which were in evidence, but that he did believe that the appellant had written a slip at the Oakland bank receipting for a certified check. The witness was then withdrawn and the appellant placed on the stand a witness who identified a letter purporting to have been written in Los Angeles by one James A. Lewis, without date, regarding a sale of an automobile. The same witness on cross-examination told a peculiar story of her travels with Mr. Lewis, finally leaving him in Chicago. The defendant went on the stand, gave somewhat of a similar story about his travels with Lewis

and their registering in hotels in Los Angeles and San Francisco, none of which he could remember, and that he last heard of Lewis a few days before his arrest. McGovern was recalled to the stand and asked to look at the letter offered as defendant's exhibit No. 3 for identification, and was then asked if there was any similarity between the handwriting of that letter and that of the man who wrote the forged checks. To this question objection was made and sustained. The question was then reframed and limited to a comparison of defendant's exhibits Nos. 4 and 5, these exhibits being photographic enlargements of the $8,600 check and of a check drawn upon the Oakland bank in the name of Henry Gail. The witness testified that he had seen and compared both. He was then asked if, after comparing these exhibits, he found any similarity to the handwriting on the letter with defendant's exhibits Nos. 4 and 5. He refused to express an opinion, claiming ethical grounds, and the record then contains a running discussion in which the attorneys for both sides and the witness took part and during which counsel for appellant asked the witness whether he had "formed an opinion" to which the witness answered that he had. If this inquiry, which as we have said was a part of a running discussion in open court, had been framed with the particularity that such question should have been framed, we would conclude that the witness came within the rule of the cases above cited, and should have been required to answer the question. However, it does not appear that the question to which this answer was given related to all the exhibits and the letter or whether it related merely to defendant's exhibits Nos. 4 and 5. It appears that the witness had not seen the letter prior to his appearance on the stand and that he had not, therefore, given it any examination, or at least the examination which he had given to all the thirty-seven exhibits which were under discussion. Naturally, if he were an expert in handwriting and found it necessary to make two minute examinations of these other exhibits from photographic enlargements in order to determine their similarity he had not qualified himself to give an expert opinion as to the letter, and the trial court was, therefore, not in error in refusing to compel him to express his opinion on that subject. The unsatisfactory condition of the record is illustrated by the motion made by defendant

to correct the record, a motion which was made and denied at the time of the motion for a new trial. At that time appellant asked to correct the record so that it might show that the question propounded to witness McGovern was for the purpose of proving by that witness that the exemplar, defendant's exhibit No. 3 for identification, was written by the same person and was in the same handwriting as the alleged forged instrument and the other People's exhibits, except No. 3. The motion was denied, and we are bound, therefore, by the record which fails to disclose whether the witness had made an examination of the letter and had formed an opinion as to the similarity of the handwriting of the letter to that of defendant's exhibits Nos. 4 and 5.

We are, however, forced to the conclusion that if the court erred in refusing to compel the witness to answer it was not prejudicial error because the answer most favorable to the appellant would have been that these two exhibits and the letter were all written by the mysterious Mr. Lewis. However, the witness, having previously testified that these two exhibits had not been written by the defendant, it could have served the defendant no purpose to have this witness testify that in his opinion they were written by Lewis, particularly when all the testimony relating to this man tended unmistakably to show that he was a mere creature of the imagination. On the other hand, if the answer of this witness had been that in his opinion the two exhibits had not been written by Lewis it would not have aided the defendant's case in any respect.

To restate the matter the prosecution had offered testimony tending to prove that the forged check and the other thirty-four People's exhibits had been written by the defendant. The witness McGovern had testified that the check and some of these exhibits (those corresponding to defendant's exhibits Nos. 4 and 5) had not been written by the defendant. There was, therefore, a conflict between these two witnesses on that point. It would not have aided the defendant in any respect if the witness McGovern had expressed the opinion that these exhibits Nos. 4 and 5 had been written by Lewis or by John Doe. Such testimony would merely have been cumulative of that which he had already given. In presenting the point the appellant merely

argues that the trial court was in error in refusing to compel the witness to testify. He has not pointed out how the assigned error could have prejudiced his case in any manner.

■ The appellant complains of the refusal to give his proposed instruction on the presumption of innocence and reasonable doubt. The jury was instructed in the language of section 1096 of the Penal Code, and this was sufficient (sec. 1096a, Pen. Code).

■ He also complains of the refusal to give a proposed instruction reading: "If you believe from the evidence that the defendant himself was victimized and believed the instrument to be genuine, etc." The jury had been instructed that it was not sufficient to find that the defendant had attempted to pass a fictitious or forged instrument but it must find that he either forged the instrument or had knowledge of its condition at the time it was passed. Thus, so much of the proposed instruction as was material was given. In so far as the proposed instruction related to the defendant himself being victimized and believing the instrument to be genuine there is no evidence upon which this could be based, the defendant himself having testified that he had never seen the forged instrument. Thus his proposed instruction was based upon the assumption that he himself had testified falsely and would have been prejudicial to him. As to the three other proposed instructions, refusal to give which is assigned as error, in so far as they related to matters material to the issues the subject matter was fully covered by other instructions given.

■ Finally it is argued that the court erred in permitting the introduction of evidence as to a transaction not charged in the information. The assignment is based upon the evidence of the Oakland transaction in which the operations of the defendant were conducted in the name of Henry Gail. This evidence was all admissible under the rule which permits the introduction of evidence of other crimes when such evidence tends to show that the crime for which a defendant is being tried is part of a general plan or system of criminal acts pursued by the defendant. (*People* v. *Frank*, 28 Cal. 507, 517, 519; *People* v. *Calpestri*, 54 Cal. App. 45, 47 [200 Pac. 1054]; *People* v. *Sindici*, 54 Cal. App. 193, 196 [201 Pac. 975]; *People* v. *Derrick*, 85 Cal. App. 406, 411 [259 Pac. 481]; *People* v. *Eppstein*, 108 Cal. App. 72

[290 Pac. 1054]; 1 Greenleaf on Evidence (16 ed.), pp. 71, 74, and note, p. 73.)

The judgment and order are affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 21, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 6, 1931.

Langdon, J., dissented.