[Crim. No. 9623.    Second Dist., Div. Three.    July 20, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES JOSEPH PIANGENTI, Defendant and Appellant.

Michael Cullen, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, J.—A jury convicted defendant of having violated section 23105 of the Vehicle Code.[1] The facts were as follows: At about 2:20 a.m. on July 20, 1963, Officer McGuire of the Pasadena Police Department observed defendant driving a car quite erratically on Walnut Street. He turned on his red light and sounded the siren. Defendant, who had appeared to be slumped over the wheel of his car, jerked erect and pulled to a stop in the middle lane of the street. The officer asked him to move his car and he did so. As soon as he came to a

---

[1] Section 23105. "It is unlawful for any person who is addicted to the use, or under the influence, of narcotic drugs, or amphetamine or any derivative thereof to drive a vehicle upon any highway. Any person convicted under this section is guilty of a felony and upon conviction thereof shall be punished by imprisonment in the state prison for not less than one year nor more than five years or in the county jail for not less than 90 days nor more than one year or by a fine of not less than two hundred dollars ($200) nor more than five thousand dollars ($5,000) or by both such fine and imprisonment."

stop at the curb, he jumped out, ran to the front of the car and opened the hood. He claimed that he did so because the car was "throwing oil," but the officer saw no evidence thereof. It was then the officer's opinion that defendant was under the influence of alcohol. This was confirmed by defendant who said that he had had two beers. Defendant's speech was slow and incoherent and he appeared sleepy, having difficulty standing on his feet.

Investigator Cookson then arrived in response to a call from Officer McGuire. He recognized defendant and checked his pupil reaction with a flashlight. He noticed pinpoint contraction. He was unable to detect any alcohol on defendant's breath or person. His actions were uncoordinated, his speech slurred and slow and his general attitude sullen.

Sergeant Boyle then arrived at the scene. He gave expert testimony to the effect that after examining defendant's eyes and arms he came to the conclusion that defendant had recently "taken a fix."

Defendant was offered a nalline test, to determine whether or not he was under the influence of narcotics. He refused such a test, if it was to be administered by the Pasadena police, but there is evidence that he would have had no objection to a test administered by the state authorities.

In defense appellant called his state parole agent who had examined his arms on July 23 at the Los Angeles County Jail and found no marks. He also called a doctor who examined him on July 26 and found "no definite evidence of needle marks."

Defendant himself took the stand, denying having been under the influence of drugs at the time in question and claimed that he had been drinking. He admitted that at one time he had been addicted to the use of narcotics, but claimed that he had stopped in 1961.

On motion by appointed counsel we ordered the record augmented to include the instructions to the jury given by the trial court. We find that the court gave only two instructions on the substantive law involved, as distinguished from instructions concerning the burden of proof, evaluation of evidence and the like.[2]

Appointed counsel urges that the court erred in failing to

_____

[2]The instruction given was as follows: "You ARE INSTRUCTED that it is unlawful for any person who is addicted to the use, or under the influence, of narcotic drugs to drive a vehicle upon any highway." The court also defined "narcotic drugs."

instruct the jury, on its own motion, that it was necessary for all the jurors to agree whether or not defendant had violated section 23105 by driving while addicted to the use of narcotic drugs or while under the influence of narcotic drugs.

It is established that if the instruction in question should have been given, it had to be given by the court on its own motion, without a request therefor. (*People* v. *Scofield,* 203 Cal. 703, 709-710 [265 P. 914].) The question posed by defendant is a troublesome one. Under the facts of this case, however, we need not decide it.

■ It appears to us that whether or not all 12 jurors had to agree on the manner in which defendant violated section 23105, he was entitled to have the court instruct the jury, on its own motion, on the definition of the words "addicted to the use . . . of narcotic drugs. . . ." In order to demonstrate the necessity of such an instruction, we will examine the evidence concerning defendant's addiction in some greater detail.

Sergeant Boyle, an officer with extensive experience in the narcotics field, testified that a tattoo which had been found in the inner elbow area of defendant's arm was predominantly used by narcotic users to hide needle marks. Officer McGuire testified that at the scene of his arrest defendant said that he had been "lushing it." Over objection he was permitted to say that this was a term usually "used by people who are off narcotics and drinking; all narcotic addicts use it."[3] Officer Cookson testified that at the time of his arrest defendant said: "You guys are just picking on me because I am a hype." Defendant testified that he had had the tattoo since 1951 when he had been convicted of possession of narcotics. He denied having a narcotic problem at the time of the trial. He first said that he had not been addicted since being released from the penitentiary in February of 1963 following a different conviction, but quickly corrected himself to say that he had not been addicted ever since he entered the penitentiary some two years earlier. Ever since his release he had been taking nalline tests once a week, with one surprise test once a month.

We need not decide whether, properly instructed, this evi-

---

[3]The record is vague on whether or not the court struck the testimony. The jury heard it. At first it was stricken on motion by defendant, but the court then proceeded to qualify the officer as an expert in language used by narcotic addicts, which would hardly have been necessary had the testimony been considered stricken.

854

dence would have justified the jury in finding that defendant was addicted in July 1963. We realize, of course, that had the court instructed the jury, the definition used would have been the one approved in *People* v. *Kimbley,* 189 Cal.App.2d 300 [11 Cal.Rptr. 519], which equated addiction with habitual use. Under the law as recently enunciated in *People* v. *O'Neil,* 62 Cal.2d 748 [44 Cal.Rptr. 320, 401 P.2d 928] this definition would have been inadequate. As the matter was submitted to the jury, each juror was free to supply his own definition.

It seems clear to us that to a layman a person who by inference admits having been an addict from 1951 until 1961 continues to be addicted. The popular press is full of articles concerning the extreme difficulty encountered by the medical profession in curing addicts. "Once an addict, always an addict" is a widely held and, in many cases, a correct belief. ■ Legally, however, a person who once has been an addict and who, for one reason or another, has discontinued the use of narcotics, is not an addict within the meaning of section 23105 unless the prosecution can show not only that he has developed a tolerance to the effect of drugs and that he is still emotionally dependent on them, but also that he is still physically dependent so as to suffer withdrawal symptoms if deprived of his dosage. (*People* v. *O'Neil, supra.*) The total lack of guidance to the jury permitted them to base a finding of present addiction on nothing but the admitted fact that defendant had been a user for a long period of time.

In the case at bench, the prosecution had a good case of driving under the influence of narcotics. On the other hand appellant had two respectable witnesses to contradict the physical evidence on his arm which had been strongly relied on by the People. It seems quite likely that any reasonable doubt which any of the jurors may have felt as to whether or not defendant had been driving under the influence of narcotic drugs, may have been resolved in their minds by them saying to themselves: "What difference does it make, he is an addict anyway."

At the outset of the trial the entire thrust of the charge against defendant was to the effect that he had been driving under the influence of narcotics. Whatever evidence of addiction found its way into the record as part of the prosecution's case was tangential. Addiction as an alternative basis for a conviction came into the case as part of the prose-

cution's cross-examination of defendant who had taken the stand very briefly and simply denied that he had taken any narcotic on the day in question and claimed that he was drunk.

If it be said that defendant's denial of addiction after 1961 was the only evidence on the issue of addiction and that in view of the denial the jury could not possibly have found that he was an addict in July 1963, the answer to such a contention is this: the very fact that on such a state of the evidence the court instructed on addiction may have been interpreted by the jury as expressing an assumption that defendant had testified falsely and was still addicted. (*People* v. *Barnes,* 111 Cal.App. 605, 613 [295 P. 1045].) The rule that disbelief of testimony does not create affirmative evidence to the contrary is not always appreciated even by lawyers, so we should not expect it of laymen. (*Dyer* v. *Knue,* 186 Cal.App.2d 348, 359 [8 Cal.Rptr. 753]; *Lubin* v. *Lubin,* 144 Cal.App.2d 781, 795 [302 P.2d 49]; *Estate of Bould,* 135 Cal.App.2d 260, 264-265 [287 P.2d 88, 289 P.2d 15].)

The matter was not argued before us and we express no view concerning it, but it is clear that upon a retrial the question of whether admission of evidence concerning defendant's repeated refusals to submit to a nalline test violated the rule of *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], will arise.

The judgment is reversed.

Shinn, P. J., and McMurray, J. pro tem.,* concurred.

A petition for a rehearing was denied August 10, 1965.

---

*Assigned by the Chairman of the Judicial Council.