[Crim. No. 11001.   Second Dist., Div. Four.   Dec. 22, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. ALVARO RUIZ
SANCHEZ, Defendant and Appellant.

Manuel Valenzuela for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James,
Assistant Attorney General, and Robert P. Samoian, Deputy
Attorney General, for Plaintiff and Respondent.

FILES, P. J.—Defendant was charged with three counts
of indecent exposure, in violation of Penal Code section 314,
subdivision 1. These offenses were alleged to have been com-
mitted on November 6 (count I), November 16 (count II)
and November 23, 1964 (count III). The information charged
a prior conviction for violating the same subsection. Defend-
ant pleaded not guilty but admitted the prior conviction. For
defendant's benefit a Spanish language interpreter was
sworn. The jury found defendant guilty on counts II and
III, but acquitted him on count I. This appeal is from the
judgment.

Carol, a 14-year-old girl, testified that on the morning of November 6 en route to her junior high school with her friends Mary, Monica, Maria and Ramona, they saw a man exposing himself on the back steps of an apartment house. She did not see his face, but she was about 15 feet away. When she arrived at school she reported this to the principal.

On November 16, Carol, in the company of the same group of girls, saw the same man in the same place doing the same thing. This time she saw his face. This incident was also reported to the principal when the girls reached school. Carol pointed out the defendant in the courtroom as the man she was talking about.

Carol testified that on November 23 they saw the same man exposing himself on the porch of the same building. This time the man was "trying to hide" his face. The witness was about 30 feet from the defendant when this occurred. She could not remember which way defendant was facing this time, but on the first two occasions he seemed to be looking at the girls. The third occasion was also reported to the principal.

Mary, age 14, testified that she was with Carol and the others on all three occasions and saw defendant exposing himself. She did not see his face the first time, but did the second time. He was facing towards the girls and she could say positively he was the defendant. She also described the third occasion when the man had his hand against his forehead.

Ramona, age 13, testified she was with the other girls on two occasions when she saw a man exposing himself at the rear of the apartment house. She had a good look at his face and could say positively he was the defendant.

Maria also testified that on two occasions she was with the other girls on the way to school when she saw a man exposing himself near the rear door of a building. She was sure he was the defendant.

The principal of the school testified that on the mornings of November 6, November 16 and November 23 Carol and some of the other girls had made a complaint of a sexual nature.

Police Officer Robison testified that on November 24 he was in the area because of the reported offenses. He noticed defendant in the rear doorway of a building in the location

described by the girls. The officer then went to the roof of a nearby apartment building from which he could observe defendant, about 300 feet away, through binoculars. The officer saw defendant expose his penis and begin masturbating. He then arrested defendant and took him to the Wilshire police station.

Police Officer Sartuche testified to a conversation with defendant at the Wilshire station. The conversation was in Spanish. The officer said he had been speaking Spanish for approximately 15 years, that he had used it in his work as a police officer, and that before becoming a policeman he had used it as a salesman in a store serving a Spanish-speaking neighborhood. He said the statements of the defendant were made freely and voluntarily and only after he had been advised of his rights. Officer Sartuche testified: "I informed the defendant of his constitutional rights. I stated that there were three of them. One of them was that if he did not want to talk to me or to any other police officer there, he did not have to. That if he wanted the services of an attorney, he may use the telephone. I pointed to the phone. I stated that if he did talk to me, I was going to write down everything in a report; and if we ever went to court, it could be used help him or be bad for him."

The officer then testified that defendant had said, in response to questions, that he had been at the place where he was arrested " 'yesterday and one day in the first part of the month' "; that he had taken out his penis and played with it, and that " 'there were some young girls through there when he was doing it, and that as they passed by him he walked down the steps.' " The officer said defendant had told him he had not spoken or touched any of the girls. The conversation lasted 10 or 15 minutes.

Defendant, testifying on his own behalf, denied that he had committed any of the acts charged. He told the jury that he was an autobody repairman, and that on the day of the arrest he had gone to the apartment building to talk to a man about work on a car that had been wrecked. He said he had been near that apartment building only once previously and that had been two days previously, when he had delivered a lady's car. Defendant testified that his arrest occurred on a Monday, November 24, 1964, and the car delivery was on Saturday. By the calendar November 24, 1964, was a Tuesday.

Defendant denied that he had admitted the offenses in his conversation with Officer Sartuche. Defendant explained to the jury that when the officer had asked about masturbating he thought the question was whether he had ever done it, so he told the officer he had done it many times, but not lately since he was married.

No other witnesses were called on behalf of defendant.

Officer Sartuche, in rebuttal, testified that another conversation had taken place in the police vehicle en route from the Wilshire station to the Hall of Justice on the afternoon of November 24. At that time defendant had stated freely and voluntarily " 'Everything I told you before wasn't the truth. The reason I told you is because I was nervous.' "

The officer also testified that during the earlier conversation he had asked defendant what he was doing at the place where he was arrested, and that defendant had said nothing about body and fender work or that he was looking for a person or a car.

The evidence, taken as a whole, strongly supports the judgment. Four girls were positive in their identification, and unless all four were mistaken defendant is guilty. The reports made to the school principal upon each occasion tend to confirm that the incidents occurred on the occasions charged. Officer Robison could not have been mistaken as to the identity of the man whom he saw exposing himself on November 24 because this is the man who was arrested and charged. The fact that defendant was exposing himself on November 24 is strong circumstantial evidence that he is the man who was seen committing the same act in the same place on the dates charged, i.e., November 6, 16 and 23. Defendant's testimony, uncorroborated by anyone or by any circumstances, could not be true unless Officer Robison's testimony was a complete fabrication. The claimed confession added no weight to the prosecution's case, whether or not the jury believed defendant's explanation that he had misunderstood the questions.

The trial of this case commenced on February 16, 1965, which was approximately eight months after the decision in *Escobedo* v. *Illinois*, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], six months after the first opinion in *People* v. *Dorado* (Cal.) 40 Cal.Rptr. 264, 394 P.2d 952, and more than two weeks after the final *Dorado* opinion had come down, following rehearing (62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d

361] ). The prosecutor indicated his awareness of the *Escobedo-Dorado* rules by establishing for the record that the police officer had warned the defendant of his constitutional rights before questioning him at the Wilshire station. There is no reason to doubt that the trial judge and defense counsel were well aware of the applicable law.

The record here shows no objection to any of the testimony concerning defendant's admissions to the police. There was no cross-examination of the officer. Although defendant himself testified to explain that he had misunderstood the questions, no claim was made that he lacked understanding of his right to counsel and his right to remain silent.

█ Upon this record the trial court correctly concluded that defendant had waived his right to silence when he engaged in voluntary conversation with Officer Sartuche at the Wilshire station. We are not required to decide whether the form of warning shown in this record is sufficient for all situations, and we take cognizance of the statement in *People* v. *Stockman*, 63 Cal.2d 494, 501 [47 Cal.Rptr. 365, 407 P.2d 277], that "an accused is entitled to receive sound legal advice as to how to respond *to each accusation as it arises*." In the case at bench there was evidence to support the finding of a waiver, there was no conflicting evidence, and there was no objection to the officer's testimony. In this case, unlike the cases tried before the *Escobedo* rule was announced (see *People* v. *Hillery*, 62 Cal.2d 692, 711 [44 Cal.Rptr. 30, 401 P.2d 140]), the absence of an objection at the trial may be taken as an acknowledgment that trial counsel was satisfied that the evidence was admissible, and that no purpose would be served by demanding additional foundation. (*People* v. *Merkouris*, 46 Cal.2d 540, 558 [297 P.2d 999].)

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.