[Crim. No. 12729.  Second Dist., Div. One.  Aug. 15, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. HENRY P. DURAZO, Defendant and Appellant.

Earl R. Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard Tanzer, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of selling heroin.

In an information filed in Los Angeles County on February 23, 1966, defendant Durazo was jointly charged with Nick Juarez Mendoza (sometimes hereinafter referred to also as Mendosa) of selling heroin on November 2, 1965. It was

further charged that Durazo previously had been convicted of a felony, namely, robbery in 1950, and that previously he had been convicted of a narcotics offense in 1958. In the same information Durazo's codefendant (Mendoza) was charged with three other counts of selling heroin. Mendoza pleaded guilty to all four counts as charged. Durazo pleaded not guilty and admitted the prior convictions as charged. Durazo was found guilty as charged in a jury trial. Defendant was sentenced to the state prison. No disposition was made of the charged prior convictions for no reason apparent on the face of the record.

Officer Martinez, of the Los Angeles Police Department, with Officer Frank Mayberry as a passenger, at about 2 p.m. on November 2, 1965, drove to an address in Pacoima. Nick Mendoza came out of a house and got into the back seat of the car. Officer Mayberry inquired of Mendoza, in effect, whether he knew where they could purchase some heroin and Mendoza responded in the affirmative. Officer Martinez drove the car westbound on Van Nuys Boulevard. After traveling some distance Mendoza directed Officer Martinez to pull over to the curb and Mendoza called to Durazo, who was on the street walking eastbound on Van Nuys Boulevard. Durazo came to the car and got into the back seat with Mendoza. Officer Martinez then drove to Pacoima Projects and parked the car. Conversation took place with reference to a heroin transaction. Officer Martinez handed a $10 bill to Officer Mayberry who handed it to Mendoza. Mendoza, in turn, handed it to Durazo. Durazo then handed a balloon to Mendoza which he handed to Officer Mayberry who, in turn, handed it to Officer Martinez. The balloon contained heroin.

On about November 8th or 9th, 1965, Officer Martinez and Jose Aguilar were driving and looking for narcotics when they saw Durazo at the Union Building, Van Nuys Boulevard and Sutter Avenue, Pacoima. Aguilar called to Durazo and inquired, in effect, whether he knew of any place where they could buy some heroin. Durazo replied in the affirmative and got into the car. They talked about some narcotics, but the record does not disclose that a sale was made by Durazo on this occasion.

Mendoza, after pleading guilty to all four counts of the information, testified in behalf of Durazo. Mendoza stated that it was not Durazo who sold heroin on November 2, 1965, as heretofore set forth, but one Richard Montoya, who looked a little like Durazo; that he first saw and met Durazo at the

preliminary hearing and that Durazo did not participate in any transaction with Mendoza, Mayberry and Martinez.

Mendoza was arrested on February 2, 1966, and on the next day he had a conversation with Officer Martinez and Sergeant Mullins, of the Los Angeles Police Department. Mendoza was advised of his constitutional rights before he was questioned by the police. Questions were asked and answers were then given.[1]

The prosecutor, after hearing Mendoza testify contrary to his statement to the police on February 3, 1966, properly impeached him by asking if on February 3, 1966, the ques-

---

[1] "Question by Officer Martinez: 'Do you remember the time we were driving along and we saw Henry Durazo on Van Nuys, we were in the Caddie?

"Answer by Mendosa: 'Was Frank in the car?

"By Mr. Martinez: 'Yuh. And Henry Durazo got in the back seat with you, and we drove over to the Pacoima Projects?

"Mendosa: 'Yuh, I think you are right.

"Martinez: 'You remember that. I gave you a ten dollar bill and you gave it to Henry Durazo.

"Mendosa: 'You gave it to Frank.

"Martinez: 'And then he gave it to you.

"Mendosa: 'He gave it to the other guy.

"Martinez: 'No, he gave it to you.

"Mendosa: 'Uh-uh.

"Martinez: 'Yes, he did. He gave it to you and you handed it to Durazo. Durazo took an orange balloon out of his mouth and gave it to you and you handed it to Frank and Frank gave it to me.

"Mendosa: 'Uh-uh.

"Martinez: 'But you remember —

"Mendosa: 'I don't remember.

"Mullins: 'Do you remember being in the car?

"Mendosa: 'Yuh.

"Mullins: 'The four of you?

"Mendosa: 'Yuh.

"Mullins: 'In a Cadillac.

"Mendosa: 'I remember being with Hank, but I don't know who the other guys were now.

"Mullins: 'Well, you remember that this officer was one of the people in the car.

"Mendosa: 'Uh-huh.

"Mullins: 'Do you remember who the other person was?

"Mendosa: 'Frank.

"Mullins: 'Do you remember being in the car with Hank?

"Mendosa: 'I am not sure, but I think I was.

"Mullins: 'Do you remember Hank taking the balloon out of his mouth and giving it to you and then you gave it to Frank?

"Mendosa: 'Yuh.

"Martinez: 'Well, you are the one that saw Hank walking down.

"Mendosa: 'Not me. It was Frank.

"Martinez: 'No, you are the one that told me to pull over.

"Mendosa: 'Frank told you to pull over. Frank knows him, too.

"Martinez: 'I know he knows him, too, but you are the one that told me to pull over. Well, if you recall this good conversation so well and who was saying what, how come you don't remember who?

"Mendosa: 'I was thinking last night, thinking of all what I did.

tions had been asked and the answers given as indicated. Mendoza answered that they had not mentioned Durazo, that no mention was made of Richard Montoya.

Durazo testified that he had been convicted of armed robbery and sent to prison in 1950, that he had not sold any heroin on November 2, 1965.

Officer Martinez testified in rebuttal that he and Sergeant Mullins had talked with Mendoza on February 3, 1966, that Mendoza prior to any talk had been advised of his constitutional rights, that the questions and answers, as indicated, had been asked and answered and a tape recording of the conversation had been made and was available.

The jury found Durazo guilty.

Appellant now asserts that it was error to admit into evidence the statements of Mendoza in violation of Durazo's constitutional rights under *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361] ; that as a matter of law the evidence is insufficient to support the judgment. There is no merit to appellant's contentions.

First of all, there was no objection at the trial level to the impeaching questions and answers. This case was tried (May 17, 18, 19, 1966) after *Escobedo, supra,* (June 2, 1964) and failure of appellant to object at the trial to the introduction of any evidence allegedly obtained without informing appellant of his constitutional rights precludes his raising the objection for the first time on appeal. (See *People* v. *Davis,* 62 Cal.2d 791, 796 [44 Cal.Rptr. 454, 402 P.2d 142] ; *People* v. *Martinez,* 239 Cal.App.2d 161, 166 [48 Cal.Rptr. 521].) The lack of an objection may be considered as an acknowledgment that the evidence is admissible. (*People* v. *Sanchez,* 239 Cal.App.2d 51, 55 [48 Cal.Rptr. 424].) The failure to assert any reliance upon the exclusionary rules at trial level forecloses the assertion of it on appeal. (*In re Lessard,* 62 Cal.2d 497, 503 [42 Cal.Rptr. 583, 399 P.2d 39] ; *People* v. *Brown,* 238 Cal.App.2d 924, 929 [48 Cal.Rptr. 204].)

Even if an objection had been made, the record is clear that

---

"Mullins: 'Well, could these things have happened and you may not remember?

"Mendosa: 'Yes.

"Mullins: 'It's possible that they did happen, you don't remember really?

"Mendosa: 'No, not that good.

"Martinez: 'I wrote these things down right after they happened, and so I know. I had the reports made on the same day that the buys went down.' ''

Mendoza was advised of his constitutional rights under the *Dorado* and *Escobedo* rules and knowledgeably waived those rights and talked to the police and made a tape-recorded statement. (See *People* v. *Stewart,* 62 Cal.2d 571, 580-581 [43 Cal.Rptr. 201, 400 P.2d 97].)

▮ Further, assuming that Mendoza had not been so advised of his rights, the rule seems to be that "since his statements were only used to impeach the credibility of his testimony on collateral matters by a showing of prior inconsistent statements, their admissibility is not affected by the prohibition against the use of unconstitutionally-obtained evidence. [Citations.]" (*People* v. *Davis,* 241 Cal.App.2d 51, 54 [50 Cal.Rptr. 215].)

As the court said in *Davis, supra,* at page 55: " '. . . there is no justification for letting a defendant affirmatively resort to perjured testimony as to collateral matters in reliance upon the government's inability to challenge his credibility.' Even had it been error to allow the officers' rebuttal testimony, it is not reasonably probable that a different result would have been reached if the testimony had been excluded. [Citations.]"

The testimony of the eyewitness (Martinez) to the crime in question is substantial. The appellant was fairly and properly convicted.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.