[Crim. No. 13591.   Second Dist., Div. Three.   June 24, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. FERNANDO
DE LA TORRE, Defendant and Appellant.

Paul A. Jacobs, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Philippe J. Monet, Deputy Attorney General, for Plaintiff and Respondent.

MOSS, J.—Defendant was charged with a violation of Vehicle Code, section 23105[1] in that he had driven a vehicle upon a highway while under the influence of narcotic drugs. The case was tried upon the transcript of the preliminary hearing. Defendant offered no evidence. He appeals from the judgment on the grounds that the evidence was insufficient to support the conviction and that certain admissions which he made to the police were admitted in evidence in violation of the rules of *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. The trial commenced on March 7, 1966 and therefore the *Escobedo-Dorado* rules apply. (*People* v. *Rollins,* 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221].)

While driving on the Hollywood Freeway, defendant made a quick lane change, almost striking the automobile of Officer Penkoff. Officer Penkoff displayed the red light on the patrol car. Before defendant's car came to a stop the officer saw an object thrown out of the right side of the car into the ivy covered embankment adjacent to the freeway. Defendant stated that he didn't have any identification and he had lost his wallet. Officer Penkoff, who was alone, called for assistance. In less than five minutes another officer arrived. They found that the object that had been thrown from the car was a piece of newspaper rolled up in which was wrapped an eyedropper and a hypodermic needle. Officer Penkoff released defendant to Officer Matson, the officer who had arrived to assist him. Officer Matson advised defendant that he had a right to remain silent, that he had a right to the services of an attorney before making any statement and that anything he said or did could be used against him in any future criminal procedures. Defendant stated that he understood his rights. Officer Matson examined defendant's arms and found slight

---

[1]All statutory references are to the Vehicle Code unless otherwise specified.

puncture marks. He then transported defendant to the Narcotic Division of the Los Angeles Police Department where defendant was booked on the charge of violating Health and Safety Code, section 11500. Sergeant Bockman, a police officer attached to the Narcotic Division, was stipulated to be an expert in the field of narcotics and in the signs and symptoms manifested by those under the influence of or addicted to narcotics. Sergeant Bockman also testified to his qualifications, which included narcotic investigations for the last ten years, the examination of over 2,000 narcotic addicts and users, two years college training in the specialized field of narcotics and law enforcement and study in the field of forensic chemistry. Sergeant Bockman examined defendant at 11:30 p.m., approximately one hour after he was first stopped. Sergeant Bockman found on defendant's right arm indications of past narcotic usage. He found one needle mark which he estimated to be from seven to ten days old. He found two other needle marks, one of which was less than a day old. On the left arm he found a track of needle marks caused from repeated injections of narcotics. He found ten scabs, all less than 18 days old. He found one fresh needle mark which was less than 24 hours old. Sergeant Bockman took defendant to a darkened room where he examined his eyes by a light accommodation test. Defendant was allowed two minutes for his eyes to become accustomed to the dark. Defendant's pupils dilated to about one-half the size of the normal pupillary diameter. Sergeant Bockman made a visual comparison with a pupilometer and it showed the characteristic pinpointed pupil of the narcotic user. Defendant's septum was brightly reddened. In response to questions from Sergeant Bockman defendant stated that he was using narcotics, that he injected himself, that he had started using heroin approximately 11 years before, and that he had taken a cure in a rehabilitation center in 1954. Defendant stated that the last time he had "fixed" was at a gas station in Los Angeles two days before his arrest. During the interview defendant's head nodded and he became inattentive at times. Sergeant Bockman formed the opinion that at the time of the examination defendant was under the influence of a narcotic, probably heroin. He estimated that defendant's most recent injection of narcotics had taken place five or six hours prior to the examination.

In attacking the sufficiency of the evidence to support the judgment defendant, through court-appointed counsel, argues that the term "under the influence" used in section 23105

should be given the same meaning that has been ascribed to it in section 23102, which makes it a misdemeanor to drive while under the influence of intoxicating liquor, and that the evidence in this case does not show that defendant was ''under the influence'' as so defined.

As used in section 23102 ''under the influence'' means that the intoxicating liquor had '' 'so far affected the nervous system, brain or muscles as to impair to an appreciable degree the ability to operate the vehicle in a manner like that of an ordinarily prudent and cautious person in the full possession of his faculties, using reasonable care and under like conditions.' '' (*People* v. *Haeussler,* 41 Cal.2d 252, 261 [260 P.2d 8].) We see no reason why the foregoing definition should not apply also to the definition of the term ''under the influence'' as used in section 23105. Sections 23102 and 23105 are both contained in chapter 12 of division 11 of the Vehicle Code which establishes as public offenses various dangerous driving practices. Our Supreme Court has observed that the purpose of section 23105 is ''to protect the motoring public from the potential danger of a person at the wheel who is 'under the influence of narcotic drugs.' Surely the person whose faculties are impaired because he is under the influence of narcotic drugs should not be permitted to drive a car. . . .'' (*People* v. *O'Neil,* 62 Cal.2d 748, 751 [44 Cal.Rptr. 320, 401 P.2d 928, 17 A.L.R.3d 806].) As so interpreted, the purpose of section 23105 is the same as that of the other sections of chapter 12, division 11 of the Vehicle Code and, therefore, the definition of ''under the influence'' developed in applying section 23102 logically should apply to determinations under section 23105 as well. It cannot reasonably be argued that section 23105 has an additional purpose, the control of the use of narcotic drugs, since section 23105 is not limited in its application to persons using narcotics illegally. Although we have found no California case which in so many words defines ''under the influence'' as that term is used in section 23105 the decisions which have sustained the convictions under that section all recite facts which are sufficient to support a finding of impairment under the test affirmed in *People* v. *Haeussler, supra,* 41 Cal.2d 252, 261; see *People* v. *Macknic,* 257 Cal.App.2d 370 [64 Cal.Rptr. 833] ; *People* v. *Smith,* 253 Cal.App.2d 711 [61 Cal.Rptr. 557] ; *People* v. *Gurrola,* 218 Cal.App.2d 349 [32 Cal.Rptr. 368] ; *People* v. *Vignoli,* 213 Cal.App.2d 855 [29 Cal.Rptr. 260] ; see also *People* v. *Piangenti,* 235 Cal.App.2d 850, 854 [45 Cal.Rptr. 538].) We hold, therefore, that the term ''under the influence'' used

in section 23105 has the same meaning as that ascribed to the same term as used in section 23102.[2]

The evidence in this case is sufficient to support a finding that the use of narcotics had impaired to an appreciable degree defendant's ability to drive safely at the time of his arrest. Sergeant Bockman's expert opinion of the result of his examination of defendant was properly admitted in evidence (*People* v. *Smith, supra,* 253 Cal.App.2d 711, 718-719.) Since the examination took place only one hour after defendant was arrested, it is a reasonable inference that he was in a similar condition at the time he was driving his automobile. (*People* v. *Vignoli, supra,* 213 Cal.App.2d 855, 856-857.) This inference is supported by the arresting officer's testimony that defendant made a sudden lane change on the freeway almost striking the officer's automobile. The evidence upon which Sergeant Bockman relied in forming his opinion was ample to support his conclusion that defendant was under the influence of narcotics. (*People* v. *Smith, supra,* 253 Cal. App.2d 711, 718-719; see *People* v. *Gurrola, supra,* 218 Cal.App.2d 349, 353-354.)

Defendant also urges that, since he was found to be under the influence of narcotics at the time of his arrest and thereafter, the trial court made an error of law in impliedly finding that he had waived his constitutional rights to counsel and to remain silent. However, there was evidence to support the finding of a waiver. There was no conflicting evidence and there was no objection to the testimony of Sergeant Bockman concerning his conversation with defendant. Failure to assert the objection below or to challenge the reliability of the prosecution's foundational evidence forecloses the defendant from raising the point on appeal. (*People* v. *Myers,* 262 Cal.App. 2d 307 [68 Cal.Rptr. 636]; *People* v. *Sanchez,* 239 Cal. App.2d 51, 55 [48 Cal.Rptr. 424]; see also *People* v. *Durazo,* 253 Cal.App.2d 555, 558-559 [61 Cal.Rptr. 391]; *People* v. *Siegfried,* 249 Cal.App.2d 489, 494 [57 Cal.Rptr. 423]; *People* v. *Campbell,* 233 Cal.App.2d 38, 47-48 [43 Cal.Rptr. 237].)

The judgment is affirmed.

Cobey, Acting P. J., and Frampton, J. pro tem.,* concurred.

---

[2]We note that the Committee on Standard Jury Instructions, Criminal, of the Superior Court of Los Angeles County, has reached the same conclusion. (See California Jury Instructions—Criminal, 972 Alternate (New).)

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.