Filed 12/20/23  P. v. Santana CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROBERT GABRIEL SANTANA,<br><br>    Defendant and Appellant. | D081480<br><br><br>(Super. Ct. No. SCD294057) |


APPEAL from a judgment of the Superior Court of San Diego County, Marian F. Gaston, Judge.  Affirmed.

Nate Crowley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Sahar Karimi, Deputy Attorneys General, for Plaintiff and Respondent.

Robert Gabriel Santana was observed masturbating at 7:00 a.m. in the direction of a chain link fence located on an embankment in a residential

area. The San Diego County District Attorney's Office charged him with one count of indecent exposure (Pen. Code,[1] § 314, subd. (1); count 1), and a jury found him guilty. The jury also found true that Santana had previously been convicted of a violation of section 314, subdivision (1). In a bifurcated proceeding, Santana admitted, and the court found true, that he had a strike prior conviction under sections 1170.12, 668, and 667, subdivisions (b) through (i). The court sentenced Santana to prison for 32 months.

On appeal, Santana contends the trial court abused its discretion in allowing the admission of evidence that there was an empty school on the other side of the fence and the potential that children might be present. He further argues the jury's verdict that he had the requisite specific intent is not supported by sufficient evidence.

We conclude that the trial court did not abuse its discretion in admitting the challenged evidence and that the verdict is supported by substantial evidence. We, therefore, affirm the judgment.

## FACTUAL BACKGROUND

At about 7:00 a.m. on March 30, 2022, Cory D. was making breakfast in his house in a residential neighborhood. He looked out his kitchen window and saw Santana on the other side of his backyard fence masturbating "in clear sight." Santana had his pants down, right above his knees, a blindfold over his eyes, and was using his left hand to stroke his erect penis forward and backward. Cory said Santana was standing on a hill facing through a metal fence into the schoolyard of a middle school. A sidewalk ran behind him at the bottom of the embankment.

---

[1]     Statutory references are to the Penal Code unless otherwise specified.

2

Cory took a photograph of Santana, which depicts a side view of Santana and shows his buttocks in addition to his left hand on his penis. He said Santana stood in the same position for two or three minutes. Santana never hid, crouched, stood behind a tree, kneeled, or lay down.

Cory then called his father and the police and went into the main room of his house. When he returned to the kitchen, Santana was gone. After about 20 minutes, he saw a police officer detain Santana on the street in front of his house.

In describing the scene, Cory said that "[b]acking up to th[e] metal fence is the schoolyard area with the area where the kids usually do PE [physical education] at, like, 8:30, 9:00 in the morning." He testified that he had seen kids in that yard, although none were present that morning. He said he called the police because it was a middle school and he had seen kids there, so he did not want this to happen later in the day. As for the surrounding area, Cory explained that there were other homes across the street.

The jury also heard evidence of Santana's prior indecent exposure convictions. On May 3, 2016, Santana exposed himself and was rubbing his penis while standing on a trolley platform. The incident was captured in surveillance footage. A witness reported that there were other people at the trolley stop including children. Two days later, another incident was recorded on video in which Santana masturbated while standing on the trolley looking out the door and after stepping off the trolley onto the platform, both times while within feet of other people. The People introduced the certified prior records of conviction for these offenses.

3

DISCUSSION

I.

The Trial Court Did Not Abuse its Discretion in Allowing the Admission of Evidence of the Middle School and the Potential Presence of Children

Santana argues it was prejudicial error for the trial court to admit irrelevant and highly inflammatory evidence of the empty school and the potential that children could be present. The People counter that the trial court properly admitted the evidence as relevant and admissible under Evidence Code section 352.

A.    *Additional Facts*

In a supplemental motion in limine, Santana requested that the court exclude any mention of children during the trial. Additionally, should the court permit the prosecution to introduce evidence that the crime occurred near a school, Santana requested that the parties stipulate that the campus was empty and closed at that time. He argued that evidence insinuating that he had a "predisposition towards children is exaggerated, highly inflammatory, and proves no material fact at issue in the case at hand." In his view, such exaggerated statements of the evidence and direct appeals to the jury's sympathy and prejudices would be improper.

The trial court initially indicated it would reserve deciding on this issue until before closing arguments. However, the prosecutor requested that the court rule on the matter before trial—specifically, as to whether witnesses could mention that it was a middle school yard. The court responded, "Yes, you can say where the incident took place; it is what it is." When defense counsel reiterated that the point should not be emphasized because it was not material to the case, the court responded, "I think [the prosecutor] can argue that this was a school; that—I assume the defense is going to point out that it

4

was spring break, the children weren't present.  But [the prosecutor] is free to argue any logical inferences from the fact that it was a school."  Defense counsel countered that, because the issue they were deciding was just "whether or not Mr. Santana willfully exposed his genitals in the presence of another person," the empty schoolyard, middle school, and children that might be involved were "not part of the elements of this case at all."  In response, the court stated, "Understood.  And I am sympathetic to why you don't want that argument to be made, but I think that [the prosecutor] is entitled to make it, that it's a schoolyard; that if the school had been in session children could have seen what was happening.  And I understand that you're going to then counter that it wasn't in session and that there were no children present, but I don't think that there's any legal reason to prohibit him from again arguing the legal inferences that can be drawn.  And then you are welcome to refute them."

B.  *Legal Principles*

Santana argues evidence about the school and the potential that children would be present was not relevant under Evidence Code section 210 and should have been excluded pursuant to Evidence Code section 352 because it was more prejudicial than probative.  To be relevant, the evidence must have "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."  (Evid. Code, § 210.)  Although generally all relevant evidence is admissible (Evid. Code, § 351), the trial court may exclude relevant evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  (Evid. Code, § 352; *People v. Cardenas* (1982) 31 Cal.3d 897, 904-905.)  "The

5

weighing process under section 352 depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon the mechanical application of automatic rules." (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.)

" ' "In applying section 352, 'prejudicial' is not synonymous with 'damaging.' " ' " (*People v. Alexander* (2010) 49 Cal.4th 846, 905 (*Alexander*).) Section 352 prejudice is " ' "evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues." ' " (*Ibid.*) In other words, " '[t]he prejudice that section 352 " 'is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.' [Citations.] 'Rather, the statute uses the word in its etymological sense of "prejudging" a person or cause on the basis of extraneous factors. [Citation.]' [Citation.]" . . . In other words, evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose.' " (*People v. Branch* (2001) 91 Cal.App.4th 274, 286 (*Branch*).)

We review a trial court's finding on the admissibility of evidence for an abuse of discretion. (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266.) Generally, we will not disturb the trial court's exercise of its discretion unless it acted arbitrarily, capriciously, or in a patently absurd manner. (*People v. Williams* (2008) 43 Cal.4th 584, 634.)

6

C.	*Santana Preserved the Evidentiary Challenge for Appeal*

As an initial matter, we address the People's claim that Santana forfeited a portion of his claim on appeal. Santana contends that his claim is cognizable because, although defense counsel did not contemporaneously object to the admission of evidence regarding children and the school, his motion in limine sufficiently preserved the issue for appellate review. We agree.

Pursuant to Evidence Code section 353, a party may not challenge a lower court's allegedly erroneous admission of evidence unless there existed "an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion." (Evid. Code, § 353, subd. (a).) " ' "[A] motion *in limine* to exclude evidence is a sufficient manifestation of objection to protect the record on appeal when it satisfies the basic requirements of Evidence Code section 353, i.e.: (1) a specific legal ground for exclusion is advanced and subsequently raised on appeal; (2) the motion is directed to a particular, identifiable body of evidence; and (3) the motion is made at a time before or during trial when the trial judge can determine the evidentiary question in its appropriate context." ' " (*People v. Pineda* (2022) 13 Cal.5th 186, 246.)

In this case, Santana satisfied this test. He argued in his motion in limine, as well as on appeal, that the facts related to the school and children were not material, were not related to the elements of the crime, were likely to inflame the passions and prejudices of the jury, and were unduly prejudicial. Although Santana cited to *Regalado v. Callaghan* (2016) 3 Cal.App.5th 582, 598, an attorney misconduct case, instead of Evidence Code section 352 in his motion in limine, he engaged in the Evidence Code section 352 weighing by arguing that the evidence was highly prejudicial

7

with no probative value. Because the Evidence Code section 353 requirement of having made a specific objection in the lower court "must be interpreted reasonably, not formalistically" (*People v. Partida* (2005) 37 Cal.4th 428, 434), we conclude Santana's argument fairly informed the trial court of the basis for his objection (*People v. Thompson* (2022) 83 Cal.App.5th 69, 101).[2] As to the second element, the motion was directed specifically to evidence discussing the middle school campus, the "playground," and the fact that children might be around and could be harmed. Finally, Santana made the motion before trial and the trial court ruled on the issue at that time.

The People nonetheless contend that Santana's arguments on appeal exceed those made below. Specifically, to the extent Santana claims additional witnesses and testimony regarding the middle school were cumulative under Evidence Code section 352, the People argue these contentions are forfeited because defense counsel did not object on that basis below.

In his reply brief, Santana clarifies that he is not arguing that the evidence was cumulative. Rather, he highlighted the repeated mentions of the middle school and children to demonstrate the prejudicial nature of the evidence.

While it is true that an objection to the admission of evidence "based on a different ground from that advanced at trial[ ] does not preserve the claim for appeal" (*People v. Marks* (2003) 31 Cal.4th 197, 228), on the briefing before us, we conclude Santana has not made the argument on appeal that the evidence was cumulative. The People do not object on any other grounds

---

[2]    We also note the People do not contend on appeal that Santana forfeited his Evidence Code section 352 challenge except to the extent they construe it as arguing that the evidence was cumulative.

that Santana forfeited his claim on appeal. His motion in limine having otherwise satisfied the requirements set forth in *Pineda*, and absent objection from the People, we conclude Santana's contention of error regarding admission of evidence is cognizable on appeal.

D.     *Analysis Regarding the Trial Court's Admission of the Evidence*

Santana first contends the evidence of a nearby empty school and the potential that children could be present was not relevant to the sole disputed fact, which was whether he had the specific intent to draw public attention to his genitals for sexual purposes. He argues the trial court's comment that the prosecution could say where the incident took place did not constitute a decision that the evidence was relevant because the test for relevancy is not merely whether a fact is somehow related to the case. Because the jury had already heard that he was in a residential neighborhood, Santana contends what was on the other side of the fence was not relevant. We disagree.

Section 314 defines indecent exposure as "willfully and lewdly" exposing either one's "person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby." (§ 314, subd. (1).) The trial court instructed the jury with CALCRIM No. 1160 as follows:

> "To prove that the defendant is guilty of this crime, the People must prove that:
>
> "1. The defendant willfully exposed his genitals in the presence of another person or persons who might be offended or annoyed by the defendant's actions;
>
> "AND
>
> "2. When the defendant exposed himself, he acted lewdly by intending to direct public attention to his genitals

9

for the purpose of sexually arousing or gratifying himself or another person, or sexually offending another person.

"Someone commits an act *willfully* when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage.

"It is not required that another person actually see the exposed genitals."

In evaluating the relevance of the school children evidence to the second prong, Santana asks us, as he did the trial court, to ignore any inferences regarding what he expected to find when he set out for that specific location in the morning and who he anticipated would see him. But given that the issue to be decided was whether he had the *intent* to draw public attention to his genitals, both are relevant. " ' " 'The test of relevance is whether the evidence tends, "logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive.' " ' " (*People v. Gonzalez* (2021) 12 Cal.5th 367, 408.) As he concedes, the fact that Santana chose a residential area on a weekday morning to masturbate already provided compelling information supporting the prosecution's case. But because he was facing away from the sidewalk and the street, what he was facing was relevant to the jury's determination of whether he intended to draw the public's attention to his genitals. A jury could reasonably infer that his apparently conscious choice to face a chain link fence open to an athletic field and a school evinced an intent to have people, including children, see his genitals as soon as they arrived at the school or began playing on the field.

We also are not persuaded that the distance between Santana and the middle school diminished the relevance of the evidence. Cory provided uncontradicted testimony that middle school children used the field directly

10

adjacent to the fence for physical education classes. This provided a link between Santana's location and the middle school beyond the field.

Santana also makes much of the fact that the school was closed for spring break. But this evidence was not presented to the jury via witness testimony or documentary evidence,[3] and Santana cites to no evidence that *he* knew the school was closed. Indeed, Cory, who had seen children on the field in the past did not know why he did not see students or parents at that time. Nor did the jury hear evidence that Santana knew what time the school day normally started. Instead, they heard only Cory's concern that the situation needed to be taken care of before children arrived. In this context, it would not have been unreasonable or illogical for the jury to infer that Santana expected the school to be in session and anticipated that families would arrive shortly. " 'Intent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense.' " (*People v. Johnson* (2019) 32 Cal.App.5th 26, 58.) The logical inferences to be drawn from Santana's decision to masturbate facing an athletic field and a school on a weekday morning "tend[ ] . . . to prove" a material fact (Evid. Code, § 210)—namely, that Santana intended to direct public attention to his genitals for sexual purposes. Thus, the trial court did not abuse its discretion in impliedly finding the evidence relevant.

In so concluding, we are not persuaded by Santana's argument under *People v. Babbitt* (1988) 45 Cal.3d 660 (*Babbitt*) that this evidence produced only speculative inferences. In *Babbit*, the defendant was convicted of first

---

[3] The only testimony on this issue was the responding officer's statement that he believed it was a holiday week. However, when asked "[w]ere you made aware that the school was vacant *at that time*?" (italics added), he responded, "No, I was not aware."

degree murder, robbery, and attempted rape of Leah Schendel. (*Id.* at p. 676.) The evidence showed Babbitt spent most of the day and evening drinking alcohol and smoking marijuana. (*Id.* at p. 678.) He then passed out on the ground and woke up with no memory of the attack on Schendel. (*Ibid.*) Meanwhile, Schendel was discovered half-naked and dead in her home. (*Id.* at p. 677.) The screen door had been cut, the television was turned on to channel 40 with no sound, the home appeared to have been ransacked, and blood was found throughout the apartment. (*Id.* at pp. 676–677.)

At trial, Babbitt did not dispute that he committed the charged offenses but asserted defenses of diminished capacity and unconsciousness. (*Babbitt*, *supra*, 45 Cal.3d at p. 676.) He presented expert testimony that he suffered from brain damage and post-traumatic stress disorder from fighting in Vietnam. (*Id.* at pp. 680–681.) In seeking to introduce evidence of the movies shown on channel 40 the night of the murder, Babbitt argued the movies contained sounds of gunfire and " 'Asian appearing people in evil roles' " that may have reminded him of Vietnam, drawn him into the apartment, and triggered the violent attack. (*Id.* at p. 681.) The trial excluded the evidence on relevance grounds and the reviewing court concluded the lower court did not abuse its discretion. (*Id.* at pp. 681–682.) In so doing, the appellate court explained that " '[s]peculative inferences that are derived from evidence cannot be deemed to be relevant to establish the speculatively inferred fact in light of Evidence Code section 210, which requires that evidence offered to prove or disprove a disputed fact must have a tendency in reason for such purpose.' " (*Id.* at p. 681.) Because there was no evidence the television was turned on before the attack or that Babbitt heard or saw the movies before entering the apartment, the court concluded "the excluded channel 40

program schedule would at most have provided a link in an incomplete chain of speculative inferences." (*Id.* at pp. 682–683.)

The instant case is distinguishable in that here we consider whether the trial court properly exercised its broad discretion in *admitting* the challenged evidence, not excluding it. Further, whereas the purported relevance of the evidence Babbitt sought to present required significant logical leaps, the evidence of the school and potential for children presented here relates directly to the intent element of the offense. In *Babbitt*, the jury would have had to presuppose that the television was turned on when Babbitt walked by, then speculate that the movie was playing triggering content at that moment *and* assume that he heard it, and then reach the conclusion that this triggering input caused a sufficient psychological reaction to cause him to commit the crime unconsciously. By contrast, where Santana chose to stand and what he pointed his genitals at while masturbating both are facts that " 'have a tendency in reason' " (*Babbitt*, *supra*, 45 Cal.3d at p. 681) to prove Santana possessed the requisite specific intent to draw attention to his genitals.

The question then is whether the trial court nonetheless should have excluded this relevant evidence as unduly prejudicial. As previously noted, evidence is not prejudicial simply because it is damaging to the defendant's case (*Alexander*, *supra*, 49 Cal.4th at p. 905), and the trial court acknowledged the potential damage of the school evidence in stating that the court was "sympathetic to why [the defense] [did not] want that argument to be made." Nonetheless, because there was no indication that Santana called out to Cory or anyone else, came into direct contact with any other individuals, or turned around and showed his genitals directly to the street, the prosecution was required to rely upon other circumstantial evidence to

13

demonstrate his intent. And while mention of sexual activity directed at children may elicit an emotional reaction, the fact that Santana chose to point his genitals at a school field where children could reasonably be expected to be playing on a weekday is strong circumstantial evidence probative of his specific intent to draw attention to his genitals. (Cf., *ibid.* [explaining that evidence is prejudicial only when it evokes an emotional bias but " ' "has very little effect on the issues" ' "].) " 'The trial court has broad discretion both in determining the relevance of evidence and in assessing whether its prejudicial effect outweighs its probative value' " (*People v. Anderson* (2018) 5 Cal.5th 372, 406), and we conclude the trial court could reasonably have found the evidence more probative than prejudicial.

Santana contends this case is similar to *People v. Merkley* (1996) 51 Cal.App.4th 472, 474-475 (*Merkley*) where the court reversed an indecent exposure conviction, finding the trial court erred in admitting prejudicial evidence that the appellant suffered a prior conviction for lewd or lascivious acts with a child under the age of 14. But in that case, the prior conviction evidence was not directed to an element of the indecent exposure offense nor was it properly admitted for the reason offered.[4] (*Id.* at p. 476.) In other words, it was highly inflammatory, but had no probative value. That was not the case here. "Evidence is substantially more prejudicial than probative [citation] if, broadly stated, it poses an intolerable 'risk to the fairness of the proceedings or the reliability of the outcome.' " (*People v. Waidla* (2000) 22 Cal.4th 690, 724.) Here, Santana's counsel had the opportunity to counterbalance any emotional response evoked by reference to the school by

---

[4] The appellate court explained that the prior conviction was a sentencing factor to be determined by the court, and the Attorney General acknowledged that the trial court erred in admitting it into evidence. (*Merkley*, *supra*, 51 Cal.App.4th at p. 476.)

eliciting evidence from Cory and the responding officer that no children were present that day and the school may have been out of session for a holiday. In other words, because the evidence before the jury made clear there were, in fact, no children at the school or in the area that morning, we cannot say there was a substantial likelihood the jury used the information for an illegitimate purpose. (*Branch, supra*, 91 Cal.App.4th at p. 286.) Under these circumstances, it was not an abuse of discretion for the trial court to impliedly conclude the evidence did not pose an intolerable risk to the trial's fairness or the reliability of the verdict. (*Waidla*, at p. 724.)

II.

Substantial Evidence Supports the Conviction

Santana next argues the record does not contain sufficient evidence to support his conviction for indecent exposure because the evidence showed he was alone at an empty field so he could not have had the specific intent to draw public attention to himself. We are not persuaded.

In considering a challenge to the sufficiency of the evidence, "we must 'examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt.'" (*People v. San Nicolas* (2004) 34 Cal.4th 614, 657–658 (*San Nicolas*).) We do not substitute our own factual determinations for the factfinder's (*People v. Koontz* (2002) 27 Cal.4th 1041, 1078 (*Koontz*)) as "'[r]esolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.'" (*People v. Brown* (2014) 59 Cal.4th 86, 106 (*Brown*).)

"The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.]

The same standard applies when the conviction rests primarily on circumstantial evidence. [Citation.] Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.] ' " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. [Citation.]' " ' " (*People v. Kraft* (2000) 23 Cal.4th 978, 1053–1054 (*Kraft*).)

Santana avers that public masturbation alone does not satisfy the specific intent element of indecent exposure. Indeed, the Supreme Court has made clear that "a person does not expose his private parts 'lewdly' within the meaning of section 314 unless his conduct is sexually motivated. Accordingly, a conviction of that offense requires proof beyond a reasonable doubt that the actor not only meant to expose himself, but intended by his conduct to direct public attention to his genitals for purposes of sexual arousal, gratification, or affront." (*In re Smith* (1972) 7 Cal.3d 362, 366 (*In re Smith*) [finding that a man who fell asleep while sunbathing nude on an isolated beach and awoke to onlookers did not "lewdly" expose his private parts].) However, in describing this as merely public masturbation, Santana also asks us to focus on the facts beneficial to his view of the evidence—that there was no evidence he knew any onlookers were around, that he did not interact with anyone, and that he was in an apparently empty area facing away from the public road. But on substantial evidence review, we must view the evidence in the light most favorable to the judgment (*San Nicolas*, *supra*, 34 Cal.4th at pp. 657–658) and may not substitute our own factual

16

determinations for the factfinder's (*Koontz*, *supra*, 27 Cal.4th at p. 1078.) The jury in this case reasonably could have evaluated the evidence differently. In particular, there was no evidence Santana lived in the area, and thus he chose to come to this embankment, which was surrounded by houses and overlooked a sidewalk and street, and to stand in broad daylight facing an athletic yard and school he did not know to be closed. Under these circumstances, a jury could logically infer Santana placed himself where he expected to be seen so as to draw attention to his genitals.

Reaching this conclusion on sufficiency of the evidence review does not imply, as Santana claims, that masturbating out in the open will always be sufficient to infer the specific intent of indecent exposure. This is not a situation where Santana masturbated in the middle of remote woods or in an open field in the wilderness only to have a backcountry backpacker accidentally stumble upon him. In such a scenario, he may not have demonstrated the required specific intent. But here, Santana dropped his pants to his knees in a suburb at a time when residents would be expected to be awake. Cory testified that he had seen neighbors walk down the street in the past and had observed children in the middle school field. Thus, in this instance, there was evidence to support the logical inference that Santana masturbated in the open with the specific intent to attract attention to his genitals for sexual purposes.

We also question Santana's claim that there are no published California cases approving an indecent exposure conviction where the defendant exposed himself with no evidence that he was aware any other person was around. While we have not undertaken a survey of the vast number of published opinions upholding section 314 convictions, we note a few cases where the defendant's knowledge of whether others were around

was not at issue, but where it is not clear from the facts that he was aware of anyone else's presence when he first exposed himself. In *People v. Curry* (1977) 76 Cal.App.3d 181, 184, a police officer observed the defendant masturbating in an alley at 6:30 a.m. and there is no evidence showing he knew of her presence when he began. Two other cases appear to similarly involve a defendant who was not aware of other people nearby when he began masturbating, but who had positioned himself so that people predictably then saw him in the act. For example, in *People v. Smith* (2012) 209 Cal.App.4th 910, 913, the defendant was convicted of indecent exposure after Maria H. looked out her living room window and saw defendant masturbating in her backyard. The opinion does not cite to any evidence the defendant knew anyone was home, but like Santana, he positioned himself where he was likely to be seen and apparently was already masturbating when Maria looked out the window. (*Ibid.*) Likewise, in *People v. Sanchez* (1965) 239 Cal.App.2d 51, 52–53 (*Sanchez*), the defendant was convicted of multiple counts of indecent exposure after girls walking to school "saw a man exposing himself on the back steps of an apartment house." (*Id.* at p. 52.) The facts do not indicate that the defendant only exposed himself after he saw the girls— rather, they suggest he already had his penis out while standing behind a building and they then walked by.[5] (*Sanchez*, at p. 52.) Regardless, the focus here remains on circumstantial evidence that Santana had the specific

---

[5] *Sanchez* was cited by the Supreme Court in *In re Smith* as an example of lewd conduct sufficient to support a conviction under section 314. (*In re Smith*, *supra*, 7 Cal.3d at p. 365.) The high court noted that Sanchez "was seen to masturbate in the doorway of an apartment house, and admitted to the police that he had taken out his penis and 'played with it.'" (*Ibid.*) On the day he arrested Sanchez, a police officer using binoculars observed Sanchez masturbating in the same location, apparently with no one nearby. (*Sanchez*, *supra*, 239 Cal.App.2d at p. 53.)

intent to draw public attention to his genitals under the unique circumstances of this case.

Turning to Santana's other arguments, we are not persuaded that the verdict is not supported by substantial evidence solely because Cory did not know Santana's intent. When asked, "Did he do anything in your opinion to bring your attention specifically to his genitals?" Cory responded, "Again, it's hard to say. I would say no." While this is one piece of evidence relevant to Santana's specific intent, it is for the jury to resolve conflicts in the evidence. (*Brown*, *supra*, 59 Cal.4th at p. 106.) If the record as a whole contains substantial evidence, as it does here, to support a rational trier of fact in finding guilt beyond a reasonable doubt (*San Nicolas*, *supra*, 34 Cal.4th at pp. 657–658), we will not disturb the verdict.

Likewise, the fact that Santana's actions may have supported a conviction for lewd conduct under section 647, subdivision (a) does not undermine the evidence supporting his indecent exposure conviction. In relying on *People v. Honan* (2010) 186 Cal.App.4th 175 (*Honan*) to argue that Santana's actions constituted only lewd conduct, he neglects to include the portion of the quotation defining the intent necessary to support an indecent exposure conviction. In full, the court stated:

> "The nature of the specific intent required for indecent exposure, then, is quite distinct from that involved in lewd conduct. A person who exposes his private parts with the intent 'to direct public attention to his genitals' is necessarily engaged in a purposeful and aggressive sexual display designed to provoke others. In contrast, lewd conduct can be committed by one who blithely *ignores* the risk of being seen and acts *despite* the presence of others, rather than because of it."

(*Id.* at p. 182.) In *Honan*, a jury convicted a defendant who masturbated in a gym sauna, while smiling at another man in the sauna, of both offenses. (*Id.*

19

at p. 179.) Notably, the court compared the statutes in evaluating an equal protection claim, not on substantial evidence review.

While the jury in this case could have concluded that Santana was guilty of lewd conduct, had it been presented with that charge, we conclude that credible evidence of solid value also supported the conclusion that Santana engaged in the kind of "purposeful and aggressive sexual display designed to provoke others" (*Honan*, *supra*, 186 Cal.App.4th at p. 182) necessary to support an indecent exposure conviction. As previously explained, " ' "[i]f the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. [Citation.]" ' " (*Kraft*, *supra*, 23 Cal.4th at pp. 1053–1054.) Cory's photograph showed Santana exposed his entire buttocks in addition to his genitals and masturbated for at least several minutes in an open place where people were likely to see him from other homes, the sidewalk, the school yard, and the street. The jury also heard that he had a record of committing indecent exposure under circumstances that were similar in that he masturbated in public but without making eye contact or calling out to others.[6] A jury could reasonably conclude this evidence collectively demonstrated an intent to again draw attention to his genitals with a purposeful sexual display as opposed to revealing simply a man blithely ignoring the risk of being seen.

---

[6] This evidence, admitted under Evidence Code section 1108, tended to show he had a propensity to commit indecent exposure. (*People v. Falsetta* (1999) 21 Cal.4th 903, 920 ["evidence of a defendant's other sex offenses constitutes relevant circumstantial evidence that he committed the charged sex offenses"]; see also *People v. Dworak* (2021) 11 Cal.5th 881, 900 [following enactment of Evidence Code 1108, "propensity" evidence is no longer deemed unduly prejudicial per se].)

Finally, we disagree with Santana that the prosecutor's closing argument effectively conceded that he lacked the requisite intent.  The prosecutor stated that Santana was "sexually gratified by the fact that he's masturbating in an open place where people could see him" and didn't "need to target anyone."  He further argued, "He is intending on directing public attention by being out in the open where he could be seen."  Santana cites no evidence that targeting of a specific person is required and caselaw, in addition to Santana's own prior convictions, suggests the contrary.  (See, e.g., *People v. Carbajal* (2003) 114 Cal.App.4th 978, 981 [defendant convicted of indecent exposure where cashier saw him masturbating under the table in a Mexican restaurant, but where evidence did not show defendant targeted anyone].)

Accordingly, we conclude substantial evidence supports the conviction.

DISPOSITION

The judgment is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


KELETY, J.


CASTILLO, J.

21